### EDWARDS et al. v. SARASOTA VENICE CO.

(Circuit Court of Appeals, Fifth Circuit. December 19, 1917.)

No. 3098.

1. QUIETING TITLE ⬡12(1)—ACTIONS—RIGHT TO MAINTAIN.

Under Gen. St. Fla. 1906, § 1950, one out of possession, claiming title, legal or equitable, to land, may maintain a bill against any person, not in actual possession, who claims an adverse estate or interest therein, for the purpose of determining such estate and interest, and quieting or removing clouds from title.

2. ESTOPPEL ⬡31—ESTOPPEL BY DEED—OFFICER OF CORPORATION.

The president of a corporation, who executes a deed in its behalf containing covenants of assurance that it is unincumbered and free from all former taxes, and with full warranty of title, is estopped from setting up any title or lien in himself, claimed by him at the time he executed the deed, on the theory that he, who by language or conduct leads another to do what he would not otherwise have done, shall not subject to loss or damage such person so relying on his representations or conduct.

3. TAXATION ⬡768—RECORDATION OF TAX DEED—EFFECT.

Where the father of the president of a corporation furnished the money with which to buy in land of the corporation sold for taxes, under an agreement that the deed taken in the name of the president should be held as security, but nothing in the tax deed, which was recorded, showed his rights, such secret equity cannot be asserted against the grantees of the corporation, holding under a deed executed by the president with full warranty, for the president of the corporation is estopped to assert his tax title, and the record of the trust deed did not show the equity.

4. ESTOPPEL ⬡45—BY DEED—GRANTEES.

Where the president of a corporation, who executed in its behalf deeds containing full warranties, thus estopped himself from asserting a tax title to such lands, his grantee, the president not claiming title from any other source, is bound by the estoppel against the president.

5. QUIETING TITLE ⬡29—DEFENSES—LACHES.

The president of a corporation, having previously acquired a tax title to wild uninclosed prairie lands of the corporation, executed a deed in behalf of the corporation, conveying the same with covenants of assurance that they were unincumbered, free from former taxes, and of full warranty. Thereafter the president conveyed a portion of the lands to his codefendants. For more than 20 years complainant and its predeces-

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sors paid the taxes on the lands, during which time neither the president nor his grantees paid any taxes. *Held* that, as laches does not grow out of mere lapse of time, but is based on a delay which works a disadvantage to another, and from the very nature of the doctrine each case must turn on its peculiar facts, complainant's suit to quiet title against the claims of the president and his grantees was not barred by reason of the delay.

Appeal from the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Suit by the Sarasota Venice Company against Robert J. Edwards and others. From a decree .for complainant, defendants appeal. Affirmed.

N. B. K. Pettingill, of Tampa, Fla., and Arthur F. Odlin, of Arcadia, Fla., for appellants.

Charles T. Curry, of Brandentown, Fla., and James F. Glen, of Tampa, Fla., for appellee.

Before WALKER and BATTS, Circuit Judges, and EVANS, District Judge.

EVANS, District Judge. The suit is by the Sarasota Venice Company against Robert J. Edwards, Frank K. Linscott, and L. A. Shattuck to quiet the title to certain described lands, aggregating 5,120 acres, in Manatee county, Fla. The court refused to dismiss the bill as amended, and the case was tried on the bill and answer, and resulted in a decree for the plaintiff.

As amended, the bill alleged that the Florida Commercial Company, a corporation, was the owner of a large area of land in Manatee county, Fla., embracing the land in controversy, and that Robert J. Edwards was the president of that corporation. On May 25, 1893, the Florida Commercial Company, by Robert J. Edwards, its president, conveyed the land in controversy by deed to David S. Baker, Jr., which deed contained a covenant of assurance that the grantor was lawfully seised in fee simple of a good, absolute, and indefeasible estate in the land purporting to be conveyed, and had full power and lawful authority to sell and convey the land, and that the land was free and unincumbered of and from all former charges, taxes, and incumbrance of all kinds, and a further covenant of full warranty of title. This deed was duly recorded a short time after its execution. The complainant is the successor in title of Baker by mesne conveyances, duly executed and described in the bill. Prior to the conveyance to Baker, Robert J. Edwards purchased at a tax sale, in the year 1890, for the nonpayment of the taxes of 1889, all the lands of the corporation of which he was president, located in Manatee county, Fla., aggregating 230,640 acres (including the lands in controversy), for the sum of $2,232.36, and on October 20, 1892, procured a tax deed to all of the corporation's land to be made to him; he being at the time the president of the Florida Commercial Company. On information and belief, the money used by Robert J. Edwards to purchase the tax certificates and acquire the tax deed was alleged to be the money of the Florida Commercial Company, or money which Robert J. Edwards, or Jacob Edwards, his father, who

controlled the company, advanced and lent the Florida Commercial Company, for the purpose of paying the taxes on its lands. This tax deed was on record at the time of the conveyance to Baker. It was alleged that the tax sale and the deed executed in pursuance thereto were void for certain reasons, which were stated at length. After Robert J. Edwards acquired the tax deed, various parties who had acquired title to parts of the land embraced in the tax deed, other than that in controversy, filed bills in the circuit court of Manatee county, Fla., and obtained decrees declaring the tax deed to Robert J. Edwards to be null and void, and directing the clerk of that court to make a marginal entry on the record to that effect. Robert J. Edwards, after acquiring the tax deed, never made any attempt to take possession of the premises embraced therein, and never made any attempt to exercise acts of dominion over the premises until the year 1914, nor did he pay, after acquiring the tax deed, any of the taxes assessed against the lands for subsequent years, and all taxes due on the lands in controversy for such subsequent years were paid by complainant and by those under whom complainant claims title. The defendants Linscott and Shattuck claim some title or interest in the land under Robert J. Edwards, the exact nature of which is unknown, but such interest was not acquired by them prior to the year 1914, and these defendants have in fact no interest in the land. The premises in dispute are unimproved prairie lands, and have never been in the adverse possession of any one, and complainant and those under whom it claims have been in possession thereof, pursuant to section 1720 of the General Statutes of the state of Florida, and the complainant is now in possession thereof in pursuance of the provisions of the statute. (The jurisdictional averments of the bill are omitted.) The bill was filed August 21, 1914.

Except as hereinafter qualified, the answer admitted the material allegations of the bill. In the answer it was denied that the tax deed to Robert J. Edwards was void for noncompliance with the Florida statutes relating to tax sales. It was averred that the money used by Robert J. Edwards for purchasing the land at tax sale was that of his father, Jacob Edwards. The money was not advanced or loaned to the Florida Commercial Company for the purpose of paying the taxes. The Florida Commercial Company and Jacob Edwards agreed that the latter was to bid in the lands at tax sale and thereafter acquire a tax deed thereto, which deed was to be held as security to Jacob Edwards for the repayment to him of the money so used in obtaining the tax deed, with interest. The bid was made and the tax title taken in the name of Robert J. Edwards solely as a matter of convenience, and thereafter Robert J. Edwards held the tax title as trustee for Jacob Edwards, until the latter's death in 1902, when the beneficial interest passed to the executors and trustees of Jacob Edwards under his will. Afterwards, on July 7, 1914, Robert J. Edwards, who continued to hold the legal title as trustee for the devisees of his father, sold and conveyed the land to the defendant Linscott. It was further averred that the decrees obtained in the circuit court of Manatee county against Robert J. Edwards, referred to in the bill, had been vacated in the year 1914 as having been rendered without notice to Robert J. Edwards. The answer concluded with a motion to dismiss the amended bill of

·complainant, on the grounds that the same was without equity, that the complainant was barred of any relief because of laches, and that the bill sets forth two inconsistent bases of relief.

The cause was heard on the bill and answer; it being announced in open court before the hearing that the plaintiff admitted the truth of the allegations of the answer. The legal questions involved in the motion to dismiss, and the exceptions to the final decree, are so intertwined that they will be discussed together.

[1] 1. Under the Florida statute a bill in equity may be brought and prosecuted to a final decree by a person or corporation, out of actual possession, claiming title, legal or equitable, to real estate, against any person not in actual possession, who claims an adverse estate or interest therein, for the purpose of determining such estate or interest and quieting or removing clouds from the title to such real estate. General Statutes, § 1950.

[2] 2. The president of a corporation, who executes a deed in its behalf, containing covenants of assurance that it is unincumbered and free from all former taxes, and of full warranty of title, is estopped from setting up any title or lien in himself claimed by him at the time he executed the deed. The estoppel is based on the principle that he, who by language or conduct leads another to do what he would not otherwise have done, shall not subject to loss or damage such person so relying on his representations or conduct. The law will not permit a person to assert a claim which he has induced another to suppose he would not rely on. Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618; Equitable Loan Co. v. Lewman, 124 Ga. 190, 52 S. E. 599, 3 L. R. A. (N. S.) 879; Kirk v. Hamilton, 102 U. S. 68, 26 L. Ed. 79.

[3] 3. The fact that the father of Robert J. Edwards furnished the money with which to buy the land at tax sale under an agreement with the Florida Commercial Company that the deed was to be held as security cannot destroy the estoppel, since, whatever might be the rights of the father of Robert J. Edwards against his son and the corporation, his claim against the complainant, at best, is but a secret equity. The record of the tax deed could convey no notice of a fact not contained in any recital of the deed.

[4] 4. The tax deed purports to convey title to Robert J. Edwards, and as he is estopped from asserting title under such deed, and did not claim title from any other source, his grantee is bound by the estoppel, and acquired no interest in the land as against the complainant under the facts appearing on the trial. Baker v. Humphrey, 101 U. S. 494, 25 L. Ed. 1065.

[5] 5. Perhaps the chief insistence of appellant is that the lapse of time intervening the making of the deed to Baker and the bringing of the present action is so great as to debar complainant of its remedy. Laches does not grow out of mere lapse of time, but is based on a delay which works a disadvantage to another. From the very nature of the doctrine of laches each case must turn upon its own peculiar facts. The adjudicated cases, says Mr. Justice Brown, in Galliher v. Cadwell, 145 U. S. 368, 372, 12 Sup. Ct. 873, 874 (36 L. Ed. 738), "proceed on the assumption that the party to whom laches is imputed has knowl-

edge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that because of the change in condition or relations during this period of delay, it would be an injustice to the latter to permit him to now assert them." See, also, Ward v. Sherman, 192 U. S. 168, 24 Sup. Ct. 227, 48 L. Ed. 391; Chase v. Chase, 20 R. I. 202, 37 Atl. 804.

We do not think the doctrine of laches can defeat the complainant's suit. The land in controversy is uncultivated prairie land; the complainant and those under whom it claimed title have paid all taxes and assessments on the land; the defendant paid none. The complainant had the right to rely on the assurance of Robert J. Edwards, as expressed in the deed of the Florida Commercial Company, executed by him as its president, that the land at that time was free of incumbrances, liens, or unpaid taxes, and that the true title was in the corporation for which he was acting. Having given this solemn assurance, and lulled the complainant into a sense of security, Robert J. Edwards will not be permitted to say that mere length of time will deprive the complainant of his remedy against him, asserted within two months after he attempted to set up an adverse title.

Judgment affirmed.