REA *v.* McLEOD *et al.*[*]

(Division A.    Oct. 4, 1926.)

[109 So. 706.    No. 25728.]

1. ESTOPPEL.

   Merely because bank takes assignment of stock to sell and apply proceeds to assignor's indebtedness to it, with reservation that five thousand dollars thereof be paid assignor's wife, does not

estop bank's president to assert his individual claim against the five thousand dollars as property of assignor.

2. APPEAL AND ERROR.

Any error in admitting ledger entries without proof as to keeping books was harmless; they being only the epitome, or summing up, of cash journal entries which went in without objection.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 974, n. 82; Estoppel, 21CJ, p. 1239, n. 70.

APPEAL from chancery court of Forrest county.

HON. T. P. DALE, Chancellor.

Suit by R. B. McLeod against J. O. Rea and others. Decree for complainant, and defendant Mrs. J. O. Rea. appeals. Affirmed.

*Paul B. Johnson* and *E. O. Sykes,* for appellant.

The sole issue presented in this case is, To whom belongs the thirty-five hundred dollars in the bank? The uncontradicted testimony shows that this money is a part of the purchase price received by the bank for the sale of one hundred and eighty-one shares of stock in the Nash-Mississippi Valley Motor Company. On November 1, 1921, a certificate of stock for this number of shares was issued jointly to Mr. and Mrs. Rea. From the face of this certificate it would naturally be inferred that they were equal owners of this stock. However, as a matter of fact, they were not; but Mrs. Rea owned sixty-five shares and Mr. Rea the balance.

Since the stock was issued in the joint name of Mr. and Mrs. Rea and the written agreement with the bank, whereby her interest in the stock was recognized and the attempt of the bank to pay her this money, all of these facts certainly make out a *prima-facie* case that this money belongs to Mr. Rea.

All of the testimony as to how Rea actually paid for this stock is beside the mark and in no wise tends to

contradict the fact that Mrs. Rea actually paid Mr. Rea for her stock. The objection of appellant to the introduction of these accounts should have been sustained for the reason that the account with the Nash-Mississippi Valley Motor Company on its face shows that it is incomplete. There is no entry whatsoever thereon shown about the subscription for eighty-one shares of stock and how it was paid for. Moreover, the bookkeeper or whoever kept this account was not introduced to show that it is correct. Nor is it shown by any one else that the old account of Mr. Rea with the New Orleans company is correct.

The title to certain securities by agreement was transferred to the bank. The bank recognized in this agreement the ownership of Mrs. Rea in this stock to the amount of five thousand dollars and agreed to pay her this amount when the stock was sold. By this contract the bank is, of course, estopped to deny Mrs. Rea's ownership of this stock to this extent. It is not only estopped by this contract but likewise there is an equitable estoppel against this bank arising from this contract and its conduct to dispute her title. 21 C. J., p. 1104.

We contend further that the appellee, McLeod, is likewise estopped both by this contract and in pais from so claiming that Mrs. Rea is not entitled to this money.

It is but fair to assume that McLeod, the president of the bank and its highest officer, knew and understood this agreement and acquiesced in it. Certainly, he had knowledge of it as can be readily inferred from his testimony. He, therefore, as president of the bank, agreed with Mrs. Rea that her interest in this stock amounted to five thousand dollars and that the bank should pay her this amount when this stock was sold. In other words, he agreed with Mrs. Rea that she owned five thousand dollars worth of this stock. Mr. McLeod cannot blow hot and cold. As president of the bank, he cannot agree that she owns this stock, and then as an

individual attempt to nullify this agreement. On the faith of this agreement, she turned over this stock to the bank and agreed what the bank was to pay her for it. The doctrine which we invoke is well stated in *Edwards et al* v. *Sarasota, etc., Co.*, 246 Fed. 773. See, also, *Dickerson* v. *Colgrave*, 25 L. Ed. 619; *Loan Co.* v. *Lewman*, 3 L. R. A. (N. S.) 879; *Kirk* v. *Hamilton*, 26 L. E. 79; *Edwards et al.* v. *Sarasota, etc., Co.*, 246 Fed. 773; *Freehold Land Mortgage Co.* v. *Walker*, 119 Ga. 321; *Mountain Home Lbr. Co.* v. *Swartwout*, 30 Idaho 559.

In the above cases the president of the corporations executed the deeds for the corporations and it was held that he was estopped from later on asserting an antagonistic title held by him as an individual. McLeod is not only estopped by the contract of the bank, but is estopped by his own conduct. In other words, there is an estoppel *in pais* also.

*Stevens & Heidelberg*, for appellees.

Much has been said by counsel for appellant in regard to the incompetency in evidence of the ledger sheet of the two automobile concerns. They claim that we did not prove that the ledger account of the New Orleans Nash Motor Company was correct and, therefore, the court erred in permitting this account to be introduced in evidence at all. We do not agree with counsel in this contention for two reasons: (1) All of the items that appeared on this account about which the witness was interrogated were items that were made in the account under his own supervision and direction at a time when he was in charge of the business of the company, its executive head; (2) the account was competent in evidence whether it was correct or incorrect for the purpose of showing that the credit which Rea himself caused to be placed to his account with the new company was a credit which appeared upon the books of the old company; and

even if Rea was not in fact entitled to this ten thousand dollar credit with the old company, even if his account with the old company was not correct, still the fact remains that the books of the old company showed that he had this credit.

Each credit item on the ledger sheet was supported by an entry in the cash journal and each one of the cash journal sheets was likewise offered in evidence, identified by J. O. Rea and no objection whatsoever was made to their competency. These cash journal entries not only support the entries appearing on the ledger account, but explain them.

We submit that the ledger sheet was competent in evidence, not only for the purpose of showing the balance credited to his account, but coupled with his own testimony and that of Mr. Duff for the purpose of showing that this balance was not built up with any funds derived from the sale of his wife's home.

The last contention on the part of appellant is that because appellee was president of the bank and because the bank entered into a contract with Rea and his wife, under the terms of which it was to receive the purchase price of all of the stock except thirty-five hundred dollars and pay to her the balance of thirty-five hundred dollars, that McLeod is estopped to deny her ownership of this thirty-five hundred dollars. It is needless to take issue with them on their statement that the bank is estopped to deny it because that is not involved in this suit; but we certainly do take issue with them in their contention that Mr. McLeod is estopped simply because he happened to be president of the bank. The authorities cited by counsel in support of this contention do not sustain their contention.

The case of *Edwards et al.* v. *Sarasota, etc., Co.,* 246 Fed. 773, is a wholly different situation. In that case the president of a corporation himself executed a deed on behalf of the corporation of which he was president, con-

taining covenants of assurance that the property con-
veyed was unincumbered and free from all former taxes,
and the court held that this president was estopped to
assert any title or lien in himself, claimed to have ex-
isted at the time of the execution of this deed.

But what representations did McLeod make in this
case? What was there that he did that misled Mrs. Rea
to her hurt and injury? He was not even acting for the
bank in this transaction. The contract by which the
bank agreed to pay her thirty-five hundred dollars was
one entered into between Rea and his wife on the one
hand and G. B. Duff acting for the bank on the other.
Even if McLeod himself had acted for the bank in the
making of this contract, it would not have estopped him
from asserting later that the thirty-five hundred dollars
agreed to be paid her was in fact money belonging to her
husband, which he as a creditor of her husband had the
right to subject to the payment of his debt. The bank
was not selling any property claimed by its president.
There was nothing in the transaction which did or could
have led Mrs. Rea to believe that the creditors of Mr.
Rea, including McLeod, would not contend that this
money in fact belonged to Rea instead of his wife. Cer-
tainly, this court will not hold that the mere fact that
Mr. McLeod was president of the bank which agreed to
pay money belonging to J. O. Rea over to his wife, Mrs.
J. O. Rea, would estop him from asserting that the mon-
ey belonged to Rea.

The decree of the lower court in this case was a
righteous one, fully supported by the evidence, and should
be sustained by this court.

Argued orally by E. O. Sykes, for appellant.

McGOWEN, J., delivered the opinion of the court.

Appellee, R. B. McLeod, filed his amended bill of com-
plaint in the chancery court of Forrest county against

J. O. Rea, Mrs. J. O. Rea, and the Commercial National Bank of Hattiesburg.

The bill avers, in substance, that the complainant and J. O. Rea, during the year 1922, and before that, were jointly interested in the Memphis Nash Motor Company and other like enterprises, that they endorsed certain notes of this corporation during the year 1922, and that these notes, at maturity, were paid by complainant, and that the defendant Rea owes him one-half of the amount so paid; the payment having been made during the year 1923.

The bill further avers that the defendants Mr. and Mrs. Rea are nonresidents; that the defendant bank has in its possession funds belonging to the defendant J. O. Rea to which Mrs. Rea is asserting some claim; that the claim of Mrs. Rea is spurious and void; and that the said money in said bank in truth and in fact belongs to J. O. Rea, and is liable to the payment of his debts.

J. O. Rea answered, denying his indebtedness to the complainant McLeod and averring that the money in the bank belonged to Mrs. Rea.

Mrs. Rea adopted the answer of J. O. Rea, and averred that the money was hers; that the amount thereof was thirty-five hundred dollars, which the bank, by written agreement made on February 4, 1923, had agreed to pay to her, and that the bank was proceeding in good faith to pay her when it was prevented from so doing by the filing of this suit. She asked that the bank be required to pay the money to her.

The defendant bank answered that it had in its possession thirty-five hundred dollars in the name of Mrs. J. O. Rea, and which she claimed as her property, and signified its willingness to pay the money to whomsoever the court should adjudge was entitled thereto.

The chancellor held that six hundred dollars of this money belonged to Mrs. Rea, and that twenty-nine hundred dollars of it belonged to J. O. Rea, and should be

subjected to the payment of the debt of J. O. Rea owing to the complainant McLeod, and adjudged, further, that the amount of twenty-nine hundred dollars was less than the amount found by the chancellor to be owing from Rea to McLeod, and Mrs. Rea prosecutes an appeal here. There is no question raised here on the finding of the chancellor that J. O. Rea, was indebted to the complainant McLeod in a sum exceeding twenty-nine hundred dollars.

This record shows that the appellee McLeod is the president of the Commercial National Bank of Hattiesburg. This bank was the successor of the Bank of Hattiesburg & Trust Company, a state bank, of which McLeod was also the president.

There had been issued to J. O. Rea and Mrs. J. O. Rea eighteen thousand one hundred dollars of the capital stock of the Nash-Mississippi Valley Motor Company, which absorbed other companies in which J. O. Rea and McLeod were the largest stockholders. The record shows, as we think fairly, that J. O. Rea was the managing officer of the new company, in active charge of the business. At the time of the organization of the last-named company, J. O. Rea became indebted to the Commercial National Bank of Hattiesburg, which advanced a large part of the money to pay for the above-described stock, and, after some time had elapsed, Mr. and Mrs. Rea entered into a written agreement with said bank by which the bank was to sell the one hundred eighty-one shares of stock and apply the proceeds to the payment of J. O. Rea's indebtedness, and pay over to Mrs. J. O. Rea five thousand dollars; also to pay her, while it held the stock by virtue of the assignment, any dividends that might accrue on the five thousand dollars of stock while in the hands of the bank and before its sale. This assignment to the said bank, or its predecessor, was in writing, and signed only by J. O. Rea and Mrs. J. O. Rea.

The appellant contends that, because complainant McLeod was president of the bank, he was estopped from asserting his claim in a court of equity, because the assignment made in writing and signed by J. O. and Mrs. J. O. Rea stipulated that five thousand dollars of the proceeds was to be paid to her; that, because the bank is estopped, as we understand counsel's argument, the president of the bank was estopped from asserting his individual claim in a court of equity, and relying mainly upon the case of *Edwards and others* v. *Sarasota, etc., Co.*, 246 F. 773, 159 C. C. A. 75, in which case the president of a corporation executed a deed as president for and on behalf of the corporation, containing covenants of assurance that it was unincumbered and full warranty of title, and afterwards he undertook to set up some title or lien in himself which he claimed existed at the time he executed the deed, ignoring the principle that the law will not permit a person to assert a claim which he has induced another to suppose he would not rely on.

There is nothing in this record to indicate that the president of this bank, McLeod, did anything or said anything that caused Mrs. J. O. Rea to believe that he would not assert his individual claim as against J. O. Rea as against his property.

We think the mere statement of the line of authorities relied on by counsel is an answer to the proposition. There must be some representation or inducement or failure to speak when one is due to speak to operate as an estoppel. We think the proof warranted the chancellor in holding that McLeod was not estopped because Mr. and Mrs. Rea had executed an assignment to the bank of which McLeod was president, with a reservation that the bank would pay to Mrs. Rea five thousand dollars. McLeod never had asserted any title to the one hundred eighty-one shares of stock, and we think there is no merit in this contention.

The next ground for reversal raised by appellant is that the ledger sheets of the motor corporation were received in evidence by the court over the general objection of the appellant, which ledger sheets tended to establish that ten thousand five hundred dollars of the sum used in payment for said shares of stock was entered on the books of the corporation from the account and as the property of the husband, J. O. Rea. The other seven thousand five hundred dollars admittedly was borrowed by Rea from the Hattiesburg Bank.

It is here now contended, though not stated to the lower court as a ground of objection, that it was not shown that J. O. Rea kept these books, and it was not shown that the books were correctly kept.

The cash journal entries explaining the ledger account of J. O. Rea went in without objection, so that, if it be conceded, which we do not decide, that it was necessary to prove that the books must be shown to have been correctly kept, the same facts were in evidence, and, the ledger entries were only the epitome, or summing up, of his accounts, so that we do not think any harm came to complainant on account of the introduction of the ledger sheets. We cannot say that the chancellor's finding on the facts of the case was manifestly wrong, as there is ample competent evidence not objected to to sustain his finding.

*Affirmed.*

Cook, J., took no part in this decision.