SHELL PETROLEUM CORPORATION v.
SHORE et ux.

SHORE et ux. v. SHELL PETROLEUM
CORPORATION.

Nos. 925, 926.

Circuit Court of Appeals, Tenth Circuit.
July 28, 1934.

Rehearing Denied Sept. 24, 1934.

See, also, (C. C. A.) 60 F.(2d) 1.

John M. Holmes, of St. Louis, Mo. (Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., on the brief), for Shell Petroleum Corporation.

Charles G. Yankey, of Wichita, Kan. (Harvey C. Osborne, John G. Sears, Jr., and Verne M. Laing, all of Wichita, Kan., and E. J. Taggart and John Bradley, both of Wellington, Kan., on the brief), for William and Hattie May Shore.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

William Shore and Hattie May Shore, husband and wife, instituted this suit against Shell Petroleum Corporation for the recovery of damages. The Shores executed an oil and gas lease to Roxana Petroleum Corporation on August 8, 1923, covering 200 acres of land in a compact body situated in Sumner county, Kan. The lease contained a covenant of warranty of title, the usual royalty provision of one-eighth, and was for a period of five years from its date and as long thereafter as oil or gas should be produced. Oil was developed in that vicinity during the year 1926. Soon thereafter Frank Reitz and Araedna Reitz-Rarrick, brother and sister, instituted a suit in the district court of Sumner county to quiet title to a narrow strip about 92 feet wide and about 1140 feet long, traversing a part of the 200-acre tract from east to west. The Shores and Roxana Petroleum Corporation were made parties defendant and joined in defending the suit without avail. Judgment was rendered for plaintiffs and it was affirmed by the Supreme Court of Kansas. Shore v. Reitz, 123 Kan. 755, 256 P. 813. The mandate issued in July, 1927. At about that time Esther Slack and others instituted a similar suit against the Shores, Roxana Petroleum Corporation, and others, asserting and seeking to quiet title similarly to the so-called Patterson tract consisting of about 5.50 acres situated within the 200-acre tract and immediately north of the Reitz strip. Although the facts relating to the titles in the two cases apparently were somewhat akin, the District Court decided the latter action in favor of the Shores and Roxana Petroleum Corporation. The decree was rendered in March, 1929; the motion for new trial was overruled in April following, and no appeal was taken.

Three wells were drilled on the Reitz strip under leases from Reitz and his sister. They were called Derby No. 1, No. 2, and No. 3. Drilling of them was begun in January, March, and July, 1927, respectively. No. 1 was at the extreme east end, No. 2 near the center, and No. 3 at the extreme west end of the strip; No. 1 was near the north line, while No. 2 and No. 3 were about midway between the north and south lines of the strip. Roxana Petroleum Corporation or Shell Petroleum Corporation, the same corporation with merely a change in name, drilled five wells on the 200-acre tract. Shore B-1 was located 102 feet south and Shore B-2, 602 feet north of Derby No. 1; Shore B-2 was 142 feet south and Shore B-3, 50 feet north of Derby No. 2; and Shore B-5 was about 150 feet south of Derby No. 3, the Shore wells being offsets to the Derby wells. All of them produced oil, but the amount is without importance in deciding this case.

Plaintiffs alleged that defendant failed and refused to drill sufficient wells in number and at the appropriate time to properly develop, operate, and protect the 200-acre tract from drainage through the Derby wells and that in consequence thereof large amounts of oil had been drained and lost. Damages were sought in the sum of $45,000.

Defendant pleaded the covenant of warranty contained in the lease; alleged that its duty was one of reasonable development; that it was not obligated to drill wells necessitated by the establishment of the adverse title to the Reitz strip; that plaintiffs could not recover for failure to drill additional wells to offset those on the Reitz tract because that necessity, if it existed, resulted from a breach of the covenant contained in the lease and that plaintiffs were estopped to assert damages in derogation of such covenant; that the wells drilled constituted reasonable development, and that the defendant therefore had discharged its obligation under the lease.

The court instructed the jury that even though the warranty of title contained in the lease was breached, that fact did not excuse defendant from its duty to offset the wells drilled on the strip in order to prevent undue drainage and that if a reasonably careful and prudent operator, having due regard for the interests of both lessors and lessee, would have drilled such offset wells, a verdict should be returned for plaintiffs and the measure of damages was stated. The jury returned such a verdict in the sum of $15,831.02. Defendant appealed from the judgment rendered thereon contending that it is not liable in any sum and plaintiffs perfected a cross-appeal contending that the judgment is inadequate in amount.

■ The very essence of the subject-matter of the lease was the development of oil and gas upon the premises. The parties could have entertained no other purpose nor sought any other objective. The instrument was silent concerning the number of wells to be drilled, their respective locations, and the time at which drilling should begin. It is difficult for contracting parties to provide for such matters in an oil and gas lease because, in the very nature of things, they depend in a large measure upon future conditions which cannot be foreseen with any degree of certainty. But the absence of an express provision relating to matters of that nature presents little difficulty. Under settled law the lease contained an implied covenant that the lessee would exercise reasonable diligence to develop the leasehold estate and to protect it against undue drainage through wells on adjoining lands. Reasonable diligence to thus develop and protect the premises means the doing of that which an experienced operator of ordinary care and prudence would do in the circumstances, having due regard for the interests of both lessor and lessee. Brewster v. Lanyon Zinc Co. (C. C. A.) 140 F. 801; Watchorn v. Roxana Petr. Corp. (C. C. A.) 5 F.(2d) 636; Orr v. Comar Oil Co. (C. C. A.) 46 F.(2d) 59; Denker v. Mid-Continent Petr. Corp. (C. C. A.) 56 F.(2d) 725, 84 A. L. R. 756; Stanolind Oil & Gas Co. v. Kimmel (C. C. A.) 68 F. (2d) 520; Mills v. Hartz, 77 Kan. 218, 94 P. 142.

■ In the execution of the contract imposing that implied obligation, the parties must have contemplated the exterior boundaries of the land as they were described in the lease and covenanted to exist. Obviously, they could not have had in mind the existence of a narrow strip crossing the tract from east to west, creating additional boundary lines which might reasonably impose an obligation upon the lessee to drill offset wells in order to protect against drainage through wells located on that strip. The effect of plaintiffs' covenant was that no such strip existed. That covenant was an express one. The situation of which complaint now is made arises directly out of a breach of that express covenant. Indeed, this case is predicated upon the contention that the lessee owed a duty to offset the wells on the Reitz strip and that, in consequence of its failure to do so, plaintiffs suffered recoverable damages due to drainage

through those wells. The very gravamen of the cause of action is failure on the part of defendant to discharge an asserted implied obligation to drill additional wells to prevent drainage through wells on that strip. But the insurmountable barrier to recovery is that the implied obligation upon which plaintiffs rely is in direct conflict with their express covenant contained in the lease. If the express covenant had remained intact without breach, drainage through wells on the strip could not have occurred and the asserted damages could not have been sustained. An "implied obligation" is one reasonably inferred from the circumstances or acts of the parties. No such obligation can be inferred or implied if it is in conflict with a provison of an express contract. In such circumstances the existence of an implied provision is conclusively rebutted. Hawkins v. United States, 96 U. S. 689, 24 L. Ed. 607; Klebe v. United States, 263 U. S. 188, 44 S. Ct. 58, 68 L. Ed. 244; Smyser v. Fair, 73 Kan. 773, 85 P. 403; Ray v. M., K. & T. Ry. Co., 90 Kan. 244, 133 P. 847; Kachelmacher v. Laird, 92 Ohio St. 324, 110 N. E. 933, Ann. Cas. 1917E, 1117; Bennett v. Giles (Tex. Civ. App.) 12 S.W. (2d) 843; 2 Elliott on Contracts, § 1359; 3 Page on Contracts, § 1438.

■ Since the alleged obligation to drill additional wells to prevent drainage through wells on the strip is in derogation of the warranted title to the leasehold estate, plaintiffs are estopped to assert it or to recover damages for its breach. They cannot say and warrant in their lease that the land embraced in the strip belonged to them and was included in the leasehold estate and afterwards assert a contrary state of facts as the basis for recovery of damages. Edwards v. Sarasota Venice Co. (C. C. A.) 246 F. 773; Rutherford v. McGee (Tex. Civ. App.) 241 S. W. 629. We do not digress to consider whether a court of equity could have granted them relief immediately after the adverse title to the Reitz tract was established or even now. It is sufficient to say that in our judgment they are not permitted to recover damages at law upon a state of facts in derogation of the express covenant contained in their written contract.

It is contended that although the covenant of warranty was breached, that could merely subject plaintiffs to liability in damages therefor and does not preclude recovery for breach of defendant's implied duty to develop and protect the leased premises. The argument proceeds upon the theory that the two covenants are separate and distinct; that

defendant's remedy for breach of the former is the recovery of damages, not its assertion in bar to the cause of action asserted here. As previously observed, it is sought to recover damages for failure to drill offset wells to those on the Reitz strip. For the reasons already reviewed, there was no implied obligation to drill such wells. It is unnecessary to discuss other questions presented, either on the appeal proper or on the cross-appeal.

The judgment is reversed, and the cause remanded, with directions to proceed in accordance with the views expressed herein.

Reversed and remanded.