## BRIMMER v. UNION OIL CO. OF CALIFORNIA.*

### No. 1259.

Circuit Court of Appeals, Tenth Circuit.
Jan. 30, 1936.

*Writ of certiorari denied 56 S. Ct. ——, 80 L. Ed. ——.

Harold C. Morton, of Los Angeles, Cal. (F. Chatterton. and W. O. Wilson, both of Cheyenne, Wyo., on the brief), for appellant.

Jerry H. Powell, of Los Angeles, Cal. (Paul M. Gregg, of Los Angeles, Cal., C. R. Ellery, of Cheyenne, Wyo., and G. R. Hagens, of Casper, Wyo., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This is an action to recover damages for breach of contract. The fourth amended petition contained three causes of action. A demurrer thereto in the nature of a motion to dismiss was sustained and judgment entered for defendant. The facts alleged in the first cause of action and admitted by the demurrer were that on December 15, 1920, the Secretary of the Interior executed and delivered to F. Chatterton a lease covering 2,400 acres of land in the Shoshone Indian Reservation and being a part of the Maverick Springs oil field, in Fremont county, Wyo.; that it was for a term of twenty years with preferential right in the lessee to renew it for successive periods of ten years each; that it required the lessee to exercise diligence in sinking wells, to drill and complete fifteen wells within one year from its date, to carry on development and operations in a workmanlike manner, and to pay a royalty of 12½ per cent. of the oil and gas extracted, an annual rental, and a cash bonus of $72,000 out of the gross proceeds of the first oil produced; that it was not assignable without the written consent of the Secretary of the Interior; that, by a subsequent instrument in writing, the Secretary consented that only five wells be drilled during the first year; that Chatterton transferred the lease to plaintiff on March 17, 1920, and on June 20th thereafter plaintiff transferred it to defendant, both transfers being approved by the Secretary; that coincident with the transfer from plaintiff to defendant and as a part of the same transaction, the parties executed a written agreement in which it was provided that defendant would perform all of the obligations of the lessee under the lease, that it would pay plaintiff a royalty of 4⅙ per cent. of the gross proceeds of oil and gas extracted and the sum of $880,000 in cash out of the proceeds of the oil, and that, "When the production of oil from said Maverick Springs Oil Field can be sold at pipe line terminus at $1.00 per barrel, and when there is available for transportation through pipe line to railroad 5,000 barrels of oil per day including the oil produced by said second party under said lease, and when owners of oil have contracted or are ready to contract with said second party for transportation of their oil through said pipe line for a period of three years or more, at a rate satisfactory to second party and there is available for pipe line transportation, at least 5,000 barrels of oil per day (including all, but not less than 1,500 barrels of oil per day produced by second party, then said second party will proceed with reasonable diligence to construct and complete and place in operation a pipe line having a capacity adequate for the transportation of 5,000 barrels of oil per day from said oil field to railroad, provided, however, that said second party shall not be required

to construct said pipe line if at the time that 5,000 barrels of oil are available for transportation, there has been constructed or in course of construction, and is completed and placed in operation within a reasonable time thereafter, a pipe line leading from said field which will be available for the transportation of the oil produced by second party from said leased premises * * *"; that on September 5, 1923, the parties entered into a supplemental agreement in which it was provided that defendant pay plaintiff $50,000 in cash and $50,000 on or before six months from that date; that such sums be applied as a credit on the $880,000; that, in consideration therefor, the obligation of defendant to drill wells, construct, complete, and place in operation a pipe line from the oil field to railroad and transport and market oil produced under the lease be suspended until December 31, 1924; that the privilege of suspension could be extended for a further period of one year from December 31, 1924, upon payment of an additional sum of $100,000 to be credited in like manner; that in all other respects the original contract should remain in force and that upon the termination of the suspension the defendant should prosecute the drilling of wells with reasonable diligence and in accordance with good business practices to the end that the wells drilled should continue to have a productive capacity of at least 5,000 barrels per day at all times until the $880,000 was paid in full; that the Secretary approved the suspension of one year and defendant did not elect to extend it for the additional period; that soon after the contract of June 20, 1921, was entered into defendant took possession of the leased land and proceeded to develop it; that nine wells were drilled thereon prior to November 3, 1923; that they made available for production and marketing more than 4,000 barrels of oil per day and drilling operations conducted by others in the field before that date made an additional 2,500 barrels per day available for that purpose; that defendant resumed drilling after January 1, 1925, and by September 3, 1927, fourteen wells had been completed having a combined productive capacity greatly in excess of 5,000 barrels per day; that oil produced in that field could be marketed only by means of a pipe line to a point on a railroad—either Riverton, 41 miles away or Shoshone, or Bonneville, 50 miles away— but that no line was constructed; that

during intermittent periods in each of the years 1925 to 1928, both inclusive, some quantities of oil from the field could have been sold at a terminus on the railroad at a price of $1 or more per barrel, but such quantities did not exceed a few hundred barrels per day at any time or 1,000 barrels during any one month or 50,000 barrels throughout the entire period; that at all times since 1925 large quantities of oil produced on the leased premises could have been marketed at such a terminus at less than $1 per barrel, but at prices which would have yielded a reasonable profit and would have enabled defendant to pay plaintiff the balance of the purchase price; that defendant failed and refused to produce, store, or market oil; and that plaintiff had fulfilled and performed each and every covenant, agreement, stipulation, provision, and condition required of him by the contracts. Judgment was prayed for $780,000, with interest.

The facts pleaded in the first cause of action were repleaded in the second, and in addition it was alleged that on or about February 1, 1929, defendant, without the knowledge or consent of plaintiff, transferred all of its right, title, and interest in the lease and its right to produce and market oil therefrom to Continental Oil Company, a corporation organized under the laws of the state of Maine; that such corporation subsequently transferred it to a corporation of the same name organized under the laws of Delaware; that the Secretary of the Interior approved both of such transfers; that defendant's transfer constituted a breach of the contract of June 20, 1921, as modified by that of September 5, 1923. Judgment was prayed for $780,000. The facts set forth in the first cause of action were repleaded in the third, and in addition it was alleged that the act of defendant in transferring the lease matured the unpaid balance of the purchase price. Judgment was prayed for $780,000, with interest.

Taking up the first cause of action, the basic question presented is whether the failure of defendant to provide pipe line facilities constituted a breach of covenant. The original lease required the lessee to exercise diligence in sinking wells, to develop and operate the premises in a workmanlike manner, and to make payment of the royalty and cash bonus out of the minerals produced; and by the contract of June 20, 1921, the defendant expressly

bound itself to perform all of the obligations resting upon the lessee. Development under a lease of that kind is the essence of the subject-matter, and there is an implied covenant that the lessee will exercise reasonable diligence in developing and protecting the leased premises and in marketing the products. Such diligence means the doing of that which an experienced operator of ordinary care and prudence would do in similar circumstances, having due regard for the interests of both lessor and lessee. Brewster v. Lanyon Zinc Co. (C.C.A.) 140 F. 801; Shell Petroleum Corporation v. Shore (C.C.A.) 72 F.(2d) 193. It is clearly alleged here that only during intermittent periods in each year from 1925 to 1928, both inclusive, could any oil have been sold at a pipe line terminus for $1 per barrel, and that quantity was less than 5,000 barrels per day, that the balance could have been sold for less, but at a reasonable profit which would have enabled defendant to pay plaintiff the balance of the cash specified in the contract, and from that it is argued that defendant was under the obligation to construct a pipe line by means of which the oil could have been marketed and the money paid. The parties expressly provided in their contract when and in what circumstances the obligation should arise. It was provided that when 5,000 barrels of oil per day, including all but not less than 1,500 barrels from the leased premises, became available and could be sold at $1 per barrel, the defendant should undertake the construction. The parties were at liberty to expressly contract upon the subject, and, as between themselves, the contract is binding and their rights are measured by its terms. An implied covenant is one which may reasonably be inferred from the whole agreement and the circumstances attending its execution. Implication when used in that sense is synonymous with intention. An express covenant upon a given subject, deliberately entered into without fraud or mutual mistake, excludes the possibility of an implied covenant of a different or contradictory nature. Brewster v. Lanyon Zinc Co., supra; Shell Petroleum Corporation v. Shore, supra; Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.(2d) 1039, 60 A.L.R. 890. But it is said that the agreement between plaintiff and defendant expressly required the latter to perform all of the duties of the lessee; that such covenant and the express provision with respect to the construction of the pipe line, construed together, mean that defendant was obligated to construct it when 5,000 or more barrels of oil became available, if some of it could be sold at $1 per barrel and the remainder could be sold for less, but at a reasonable profit which would enable payment of the royalty and balance of the purchase price. If sanctioned, the contention would emasculate the plain language of the express covenant in the contract. It provided definitely and with precision that the duty should depend upon two factors, quantity and price. Both were fixed, the quantity being 5,000 barrels or more per day and the price being $1 per barrel. Having expressly covenanted that the duty to construct the pipe line would not arise until the specified quantity was available and was marketable at the specified price and it affirmatively appearing from the face of the pleading that the oil could not have been sold at that price, plaintiff cannot recover upon an alleged existence and actionable breach of an implied covenant of a different and contradictory nature.

The second cause of action is founded upon the doctrine of anticipatory breach of contract. The act of the defendant in transferring the lease to the Continental Oil Company is relied upon to constitute the breach. It is expressly alleged in clear language that plaintiff has fulfilled and performed each and every covenant, agreement, stipulation, provision, and condition required by the contract. In other words, it has been completely executed on his part. The doctrine of anticipatory breach is generally recognized, but it is confined in its application to contracts which contain mutually executory provisions. It has no application to a contract in which the complaining party has fully performed. That is the prevailing rule, and this court is definitely committed to it. Roehm v. Horst, 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953; Central Trust Co. of Illinois v. Chicago Auditorium Ass'n, 240 U.S. 581, 36 S. Ct. 412, 60 L.Ed. 811; Operators' Oil Co. v. Barbre (C.C.A.) 65 F.(2d) 857; Moore v. Security Trust & Life Ins. Co. (C.C.A.) 168 F. 496; Washington County v. Williams (C.C.A.) 111 F. 801; Leon v. Barnsdall Zinc Co., 309 Mo. 276, 274 S.W. 699; Manufacturers' Furniture Co. v. Read, 172 Ark. 642, 290 S.W. 353; Fidelity & Deposit Co. v. Brown, 230 Ky. 534, 20 S.W.(2d) 284; Sagamore Corporation v. Willcutt,

120 Conn. 315, 180 A. 464; Cobb v. Pacific Mut. Life Ins. Co. (Cal.Sup.) 51 P. (2d) 84; 1 Restatement, Contracts, § 318; 3 Williston, Contracts, § 1296.

■ The remaining contention, presented in the third cause of action, is that by the transfer of the lease defendant voluntarily disabled itself to perform the contract and in consequence the balance of the purchase price became due immediately. There are many cases in which it is held generally that, if a party to a contract voluntarily renders performance on his part impossible, it is equivalent to a breach, but in virtually all of them an obligation to pay a stated sum was fixed and the only contingency depended on the efforts of the promisor or on a condition reasonably certain to mature. Here the obligation to pay the purchase price was not fixed and absolute with the time of payment constituting the contingency. The duty to pay was only from a particular fund to be created by the marketing of oil. The duty to market oil depended on one of two contingencies, either that some other party would construct a pipe line to a railroad terminus or the existence of a market price of $1 per barrel for oil with the resulting requirement that defendant provide such pipe line. Both contingencies were entirely beyond the control of defendant, neither may ever ripen, and a suit instituted in advance thereof is premature. Watchorn v. Roxana Petroleum Corporation (C.C.A.) 5 F.(2d) 636; Johnson v. Geddes, 49 Utah, 137, 161 P. 910.

The judgment is affirmed.