A. F. BUCHANAN and wife, Celeste Buchanan, et al.,

v.

SINCLAIR OIL & GAS COMPANY, et al.

No. 15101.

United States Court of Appeals, Fifth Circuit.

Jan. 18, 1955.

Rehearing Denied Feb. 25, 1955.

Orrin W. Johnson, Harlingen, Tex., Cecil A. Morgan, Ft. Worth, Tex., for appellants.

C. W. Truehart, San Antonio, Tex., Paul A. McDermott, Ft. Worth, Tex., Thomas Fletcher, Houston, Tex., for appellees.

Nat J. Harben, Ft. Worth, Tex., James W. McCartney, Houston, Tex., Vinson, Elkins, Weems & Searls, Houston, Tex., of counsel, for Sinclair Oil & Gas Co.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

Brought by A. F. Buchanan and wife, R. R. Rice, Clara B. Rice, a widow, and Valfalfa Farms, a partnership composed of A. F., K. C., and William I. Buchanan, and A. F. Buchanan, Jr., against Sinclair Oil & Gas Company and fifty-nine others made defendants as parties so affected by the litigation as to be indispensable, the suit was for: (1) a declaratory judgment that a certain oil and gas lease No. 377, one of three leases executed by plaintiffs to Sinclair, has by its own terms terminated or come to an end; (2) a judgment removing all clouds on plaintiffs' title cast by lease No. 377; (3) an accounting by Sinclair for royalty payments on the two adjoining leases; and (4) damages arising from the breach

of two alleged oral agreements, one to furnish plaintiffs with the gas requirements for their operations, the other to lease and operate each of the three leases as separate units without pooling or unitization.

Sinclair did not dispute plaintiffs' right to an accounting. It did, however, file a motion based upon the pleadings, affidavits and exhibits, for a partial summary judgment dismissing the complaint as to all other issues, while plaintiffs, opposing Sinclair's motion, moved for a summary judgment declaring lease No. 377 terminated.

The court, denying plaintiffs' and granting defendants' motion, for the reasons fully and carefully set out by him in an opinion [1] filed in the cause, entered a judgment: (1) that the claim for accounting be severed and separately tried; (2) that appellants take nothing by their claims for damages and their suit for judgment declaring lease No. 377 terminated; (3) aligning the other defendants as plaintiffs, and dismissing the suit as to them; (4) containing an express determination under Rule 54(b), Fed.Rules Civ.Proc. 28 U.S.C.A., that there was no just cause for delay and express directions for the entry of a final judgment.

Appealing from the judgment, the original plaintiffs are here presenting for reversal three grounds of error: (1) that lease No. 377 has by its own language terminated; (2) that, if so, the district court erred in dismissing the 59 defendants other than Sinclair whose mineral interests Sinclair has attempted to pool with parts of lease No. 377; and (3) that the evidence of an oral gas sales agreement to supply plaintiffs' gas requirements, and for breach of which they sought damages, was admissible and the entry of summary judgment as to the damage claim based on this agreement was error.

The appellee, vigorously opposing these contentions, insists that the judgment was right and must be affirmed. We agree with appellee that this is so.

In his opinion the district judge, fully, carefully, and correctly stated the claims made by plaintiffs below and the facts on which the judgment denying them rests. We shall, therefore, without undertaking to set out the facts in detail, refer to that opinion for them, saying here only that we find ourselves in general agreement, with the district judge's conclusions, that there were no disputed issues of fact and that the case was one for summary judgment, and with his statement of the governing principles of law which required a judgment for the defendant.

As to the claim for damages, we are in complete agreement with the conclusions of the district judge, that the alleged oral agreement to sell the plaintiffs the gas requirements for their operations represented an unpermissible effort to vary and contradict the lease and that plaintiffs' suit for damages based upon proof of such agreement must fail, and, upon the authorities [2] and for the reasons given by him therefor, we affirm the judgment as to that claim.

With regard to the claim that lease No. 377 has terminated for failure of the lessee to pay the agreed rentals or drill on some part of the land described in it, while we agree with the conclusion of the district judge that the lease has not terminated, we are of the further opinion that, unlike the question raised with respect to the suit for damages, this question requires something more from us than a mere statement that we agree with the reasons given by the district judge for his conclusion. Summarized, the controlling facts on this issue are:

The lease, dated April 2, 1945, was "for ten years and as long thereafter as oil, gas, etc. are produced from the leased premises". It declared:

1. Buchanan v. Sinclair Oil & Gas Co., 126 F.Supp. 950.

2. To which may be added Inner Shoe Tire Co. v. Treadway, 5 Cir., 286 F. 838; and

South Florida Lumber Mills v. Breuchaud, 5 Cir., 51 F.2d 490.

"If operations for the drilling of a well for oil or gas are not commenced on the leased premises on or before the second day of April, 1946, *this lease shall terminate as to both parties unless* the lessee shall on or before that date pay or tender to lessor, or deposit to his credit, the sum of $656.98 which shall operate as a rental and cover the privilege of deferring commencement of drilling operations for the period of one year from said date."

It further declared:

"In like manner and upon like payments or tenders, the commencement of drilling operations may be further deferred for like periods successively."

Operations for the drilling of a well for oil or gas have never been commenced on the premises, included in the description of the lease. Sinclair, however, made each of the required delay rental payments in due season on or before April 2, of the years 1946, 1947, 1948, and 1949. It also made payments on or before April 2 of the years 1950 and 1951, of sums less than $656.98 and plaintiffs challenge the sufficiency of these payments. For the year 1952 and years following, it has not made or attempted to make any payments.

On February 14, 1950, under authority of paragraph 13 [3] of leases No. 377, Sinclair executed and filed, using a description furnished by Buchanan, a designation of a unit known as Buchanan Gas and Distillate Unit, hereafter called Buchanan Unit, in which was included a tract of land out of lease No. 377 supposed at first to contain 99.95 acres, but later, in January, 1951, determined to contain 104.39 acres.

Drilling on well No. One of the Buchanan Unit, located on lands contributed to it by lease No. 378, began on March 15, 1950. The well was completed on May 15, 1950, and on June 27, it was temporarily shut in. Under a provision of the lease therefor, Sinclair paid shut in royalty of $99.95 on the basis of $1.00 an acre on the assumed 99.95 acres. On August 12, 1950, the well was turned into the Donna Gas System, was shut down for a few days, and on August 16, 1950, resumed steady production, which continued until March 26, 1951, when, because of pressure decline, it became incapable of producing into the system, and the well was shut down for a work over which began on May 9th and was completed on May 15th. Beginning May 16 when it produced into the Donna Gas System for 12 hours, after alternate production and interruption, it commenced steady production on May 22nd, and has since produced continuously into the system.

With respect to the payments in 1950 of $643.00 as delay rentals instead of the $656.98 called for in the lease, the undisputed evidence shows: that Sinclair determined that the lessors did not own 13.98 acres of the land described in the lease; that acting under paragraph 17,

3. "13. Lessee is hereby granted the right and power to pool or combine the acreage covered by this lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, in the same section or sections, survey or surveys, or adjoining section or sections, survey or surveys, into one or more pools or communitized areas, when in lessee's judgment it is necessary or advisable to do so in order properly to develop and operate said premises in compliance with the spacing rules of any lawful authority, or when to do so would, in the judgment of lessee, promote the conservation of the oil and gas in and under and that may be produced from said premises. Lessee shall execute in writing an instrument and furnish a copy thereof to lessor, identifying and describing the pooled acreage. If production is found on the pooled acreage, it shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not. In lieu of the royalties elsewhere herein specified, lessor shall receive, in accordance with the provisions of paragraph '11' hereof, on production from a unit so pooled, only such portion of the royalties stipulated herein as the amount of lessor's acreage placed in the unit bears to the total acreage so pooled in such unit."

providing for a surrender of the lease or any part of it, it, on March 30, executed a release thereof; and that assuming that the total acreage remaining was 643, it accordingly tendered and paid $643 or $1.00 per acre, and this payment was accepted and retained by lessors.

With respect to the tender in 1951 of $647.44 [4] instead of $656.98 as called for in the lease, or $643.00 tendered in 1950, the undisputed evidence shows that the amount was tendered as the amount assumed to be due after the release of the 13.98 acres and the discovery that the unit contained 104.39 acres instead of 99.95 acres as at first assumed.

On these facts the appellants, invoking the strict law of the Texas cases,[5] insist that because of the failure in April, 1950, to tender the stipulated rental, the lessee's estate in lease No. 377 came to an end in that year in accordance with the terms of the lease and that if this is not so, then by its own language lease No. 377 terminated on April 21, 1951, for want of timely delay rental payment as to its entire acreage, or, alternatively, as to the 543.05 acres lying outside the Buchanan unit.

Appellee, urging upon us that there was no lapse or termination of the lease in 1950, for failure to pay the rental required, insists that this is so for three reasons. The first of these is that the $643.00 tendered was sufficient because 13.98 acres were surrendered and a proportionate reduction of the rental was made under the authority of paragraphs 9, 12 and 17 of the lease, and since at that time it had not been discovered that the unit contained 104.39 acres as against the assumed 99.95 acres the amount ten-

dered and paid must be regarded as sufficient. The second reason is that the amount tendered and paid was received and retained by lessors without objection or complaint. The third reason is that appellants were paid and received shut in gas well royalties for the twelve month period from May 15, 1950, to May 15, 1951, of 99.95 acres at the rate of $1.00 an acre on the portions of the lease designated as in the unit.

■ We are in no doubt that the second ground put forward by appellee, that the tender and payment in 1950 was made and received under circumstances bringing this case clearly within the rule laid down in the Texas cases,[6] is well taken and that the district judge was right in concluding that the lease did not terminate in 1950. While, therefore, we are strongly impressed with the equities of appellee's position [7] and with its contention that its first and third reasons are also sufficient to support the conclusion of the district judge, we pass the questions which the first and third reasons present without undertaking to decide them.

We come, then, to the crucial question in the case, whether, as contended by the appellee and found by the district judge under the decisions of this court in Scott v. Pure Oil Co., 5 Cir., 194 F.2d 393, and of the Supreme Court of Texas in Southland Royalty Co. v. Humble Oil & Refining Co., 151 Tex. 324, 249 S.W.2d 914, the drilling on, and production from, the Buchanan unit has preserved the lease in its entirety so that no delay rentals were due in 1951, or have since become due.

4. A total consisting of $104.39 for the 104.39 acres in the unit and $543.05 assumed to be the balance of the lease acreage outside the unit.

5. Texas Co. v. Parks, Tex.Civ.App., 247 S.W.2d 179; W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, at page 520; Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355.

6. Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355; Mitchell

v. Simms, Tex.Com.App., 63 S.W.2d 371; Cox v. Miller, Tex.Civ.App., 184 S.W. 2d 323; McCoy v. Texon Royalty Co., Tex.Civ.App., 124 S.W.2d 877; Panhandle Refining Co. v. Swope, Tex.Civ.App., 241 S.W. 597.

7. Cf. Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355 and St. Louis Royalty Co. v. Continental Oil Co., 5 Cir., 193 F.2d 778.

We agree with the appellee and the district judge that this is so. We will, therefore, not concern ourselves here with the effect of either the shut in royalty payments made in June of 1950, or the rental payments made in 1951, but, addressing ourselves directly to the issue of the drilling, reworking and operation of, and the production from, the unit well, we will, as briefly as we may, give our reasons for agreeing that the judgment must be affirmed.

Coming directly to the point, we find ourselves in complete agreement with the conclusions of the district judge: that there is no substantial difference between the pooling provision of lease No. 377 and the similar provision in the lease under construction in Scott v. Pure Oil Co., supra; that under paragraphs 8 and 16 of lease No. 377, Sinclair has the right to, and did, within sixty days after March 26, 1951, when the well on the unit ceased to produce, resume drilling operations;[8] and that the resumption of such operations within that time resulting in renewed production which has since continued, has kept the lease in force, making further rental payments unnecessary to keep the lease in force during the primary term.

This is not to say, as seems to have been thought in Texas Gulf Producing Co. v. Griffith, 218 Miss. 109, 65 So.2d 447, 451, to be the case, that this court and the Supreme Court of Texas, in so holding, have in effect held that "the production from such unit well" (would) "keep the lease in force indefinitely as to the leased land without the unit" (and) "the lessor would be deprived of the right to drill on the leased land without the unit and deprived of any royalties, rentals, or benefits therefrom".

The exact contrary of this has been held in Texas Company v. Davis, 113 Tex. 321, 331, 254 S.W. 304, 255 S.W. 601, and the companion case reported in that volume, and in W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27 and the host of cases following in their train, where it has been pointed out (1) that the estate acquired by the so-called lessee and his assigns is a determinable fee which will be lost on cessation of the use of the land for purposes of oil and gas exploration development and production; (2) the estate of the lessee or his assigns will not survive abandonment or disuse; (3) the lessee, when the lease was taken was, and at all times afterwards remained, subject to the implied obligation to continue the development and production of oil or gas with reasonable diligence; and (4) and (5), while breach of the implied covenant will not authorize forfeiture and the usual remedy for its breach is an action for damages, in accordance with the equitable procedure[9] established in state and federal courts, a court will, under extraordinary circumstances, entertain an action to cancel the lease in whole or in part.

In the light of these accepted, indeed imperative principles, it should be, we think it is, clear that, in urging upon us in this case the claimed inequity which would result if appellee is permitted to hold the entire lease without development by the device of including a part of it in a unit and citing the Mississippi case in support, the appellants have misconceived in nature and effect the judgment appealed from.

What and all that the district judge determined, and adjudged, all that we hold and adjudge in affirming his judgment, is that, under the undisputed facts, drilling on, and production from, the unit well has kept, and is keeping, the lease in force against the claim that because there is no production from the lands described in lease No. 377, the

---

8. Cf. St. Louis Royalty Co. v. Continental Oil Co., note 7, supra.

9. Amerada Petroleum Co. v. Doering, 5 Cir., 93 F.2d 540, 114 A.L.R. 1385 and cases cited; Lea v. Vasco Products, 5 Cir., 95 F.2d 59, at page 63; Hull v. Magnolia Petroleum Co., 5 Cir., 119 F.2d 123, at page 126; Humble Oil & Refining Co. v. Romero, 5 Cir., 194 F.2d 383.

lease has by its own terms expired or terminated. Nothing in the district judge's holding or judgment, nothing in our affirmance of it, justifies, authorizes, or will permit appellee to hold the un-unitized portion of the lease against well-founded legal claims, of abandonment or for damages for breach of the implied covenants, or, where there is no other adequate relief, against well-founded claims, for relief in equity.

The judgment is affirmed without prejudice therefrom to appellants' right to resort to any relief other than that specifically sought and denied in this case, to which they may be advised they are entitled.