WELLS, et al. *v.* CONTINENTAL OIL COMPANY, et al.

No. 42355      June 11, 1962      142 So. 2d 215

*Travis & McKee, Lawrence J. Franck,* Jackson; *L. B. Porter,* Union, for appellants.

510

*Brunini, Everett, Grantham & Quin,* Jackson; *George Wear,* Houston, Texas; *George Conger,* Bartlesville, Okla., for appellees.

Kyle, J.

This case is before us on appeal by Floyd E. Wells and others, complainants in the court below, from a judgment of the Chancery Court of Smith County rendered in favor of Continental Oil Company and others, defendants in the court below, dismissing with prejudice the amended bill of complaint filed by the appellants against the appellees, seeking a partial cancellation of an oil, gas and mineral lease given by the appellants, Floyd E. Wells and his wife and Julius Edward Wells and his wife, to the defendant Continental Oil Company on January 10, 1958, covering 70 acres of land in Section 1, Township 10 North, Range 17 West, in Simpson County, Mississippi, and 44 acres of land in Section 6, Township 10 North, Range 16, West, in Smith County, Mississippi, which was owned by the above mentioned complainant-lessors at the time of the execution of said lease, and seeking to confirm the title of the complainants O. A. Phillips and Henry N. Toler to an oil, gas and mineral lease covering 88.05 acres of the above mentioned 114-acre tract executed by the complainants, Floyd

E. Wells and his wife, and Julius Edward Wells and his wife, to O. A. Phillips and Henry N. Toler on September 23, 1960.

The facts relating to the execution of the above-mentioned oil and gas lease, dated January 10, 1958, the creation of a 40-acre drilling unit and the production of oil therefrom in commercial quantities are substantially as follows:

On January 10, 1958, the appellants Floyd E. Wells and his wife, Melbaline Robinson Wells, and Julius Edward Wells and his wife, Mary Ruth Wells, lessors, referred to in the record as complainant-lessors, executed to Continental Oil Company, lessee, an oil, gas and mineral lease covering an estimated 114 acres of land located partly in Simpson County and partly in Smith County, Mississippi, and in the area now known as the Magee Oil Field. Paragraph 2 of the lease provided that the lease should continue in force for a primary term of one year and 2½ months from the date thereof, "and as long thereafter as oil, gas, or other minerals produced from the land herein leased or from any land with which said land or any part thereof is then unitized as hereinafter provided." Thereafter, under agreements and assignments not here in issue, Arkansas Fuel Oil Corporation became the owner of an undivided one-half interest in and the operator of said lease, the remaining one-half interest being retained by Continental Oil Company. Other defendants named in the bill of complaint later acquired from and through Arkansas Fuel Oil Corporation various interests in the one-half interest of Arkansas Fuel Oil Corporation, all of which are held subject to the final decision in this case, in so far as the disputed acreage is concerned.

On August 25, 1958, Arkansas Fuel Oil Corporation filed with the Mississippi Oil and Gas Board a Notice of Intention to Drill the "Floyd E. Wells, et al., Well No. 1" on a 40-acre drilling unit designated on the

plat attached thereto, said unit containing 20.12 acres located in Simpson County and 19.88 acres located in Smith County, and said well to be located on a portion of the Floyd E. Wells lease. On September 7, 1958, drilling operations were begun in earnest, and on December 30, 1958, the well was completed as a producer of oil in commercial quantities. On January 9, 1959, Arkansas and Continental, pursuant to the provisions of Paragraph 5 of the above mentioned lease, executed a Designation of Unit, which was duly recorded in Smith and Simpson counties, establishing the 40-acre drilling unit for the "Floyd E. Wells et al., Well No. 1", and reflecting that a total of 25.95 acres of the lands covered by the Floyd E. Wells lease was included in the drilling unit. On March 20, 1959, the well was completed in the Bailey (Sligo) sand as a dual producer. The well has continued to produce in paying quantities since that time, and the appellant-lessors have received their shares of the royalty payable on such production.

On September 23, 1960, Floyd E. Wells and his wife and Julius Edward Wells and his wife, lessors in the lease to Continental Oil Company, dated January 10, 1958, executed to O. A. Phillips and Henry N. Toler, referred to in the record as complainant-lessees, an oil, gas and mineral lease covering the same lands described in the Continental lease, less and except the 25.95 acres included in the producing unit.

The appellants, Floyd E. Wells and his wife, Julius Wells and his wife, O. A. Phillips and Henry N. Toler, as complainants, filed their original bill of complaint in this cause on April 10, 1961, against the appellees, Continental Oil Company, Arkansas Fuel Oil Corporation and other corporate defendants therein named, seeking to cancel the Continental lease, in so far as it covered the 88.05-acre tract not included within the drilling unit mentioned above, and seeking to establish the Phil-

lips and Toler lease as the only valid lease covering the 88.05-acre tract.

On May 30, 1961, the complainants filed an amended bill of complaint. In their amended bill the complainants alleged the material facts concerning the execution by the complainant-lessors of the above mentioned lease of the 114 acres of land to Continental Oil Company on January 10, 1958, the establishment of the 40-acre drilling unit, and the drilling of a producing well during the primary term of the lease on the 25.95 acres of the Wells' land included within the drilling unit. The complainants further alleged that no drilling operations were begun on the remaining 88.05 acres of the land covered by the Continental lease during the primary term, and that by reason thereof the Continental lease as to the said 88.05 acres had expired. The complainants further alleged that on September 23, 1960, the complainant-lessors leased to the complainant lessees Phillips and Toler the remaining 88.05 acres, and that the lease granted by the complainant-lessors to the said Phillips and Toler was the only outstanding oil and gas lease covering the said 88.05 acres. The complainants therefore prayed that the court adjudge the complainant-lessees, Phillips and Toler, to be the owners of a valid lease covering the 88.05 acres, and that the Continental lease be cancelled as to the 88.05 acres as a cloud on their title.

The defendants filed their answer on July 19, 1961, and in their answer the defendants admitted the allegations of the bill of complaint as to the execution of the oil and gas lease by complainant-lessors to Continental Oil Company on January 10, 1958, and the allegations of the bill of complaint as to the establishment of the 40-acre drilling unit and the drilling of a producing well thereon during the primary term of the lease. The defendants also admitted that no other well had been drilled on the 114-acre tract owned by the complainant-

lessors. The defendants averred, however, that by rea-son of the production of oil in commercial quantities on the 25.95 acres during the primary term their rights under the lease of January 10, 1958, were continued in full force and effect; and the defendants denied that the lease should be cancelled or that the Phillips and Toler lease should be recognized as a valid lease.

The cause was heard by the chancellor in vacation upon the pleadings, process and proof. The complain-ants' attorneys offered in evidence the oil and gas lease dated January 10, 1958, given by the complainant-lessors to the defendant Continental Oil Company, and also the several instruments of assignment referred to in the original and amended bills of complaint, and also the reports to and orders entered by the State Oil and Gas Board relating to the establishment of the 40-acre drilling unit. The complainants also offered in evidence the lease executed by the complainant-lessors to Phillips and Toler on September 23, 1960.

Floyd E. Wells and Henry N. Toler were then called to testify as witnesses on behalf of the complainants. Wells stated the facts concerning the execution of the lease, dated January 10, 1958, to Continental Oil Com-pany, and the creation of the drilling unit, which em-braced 25.95 acres of the 114-acre tract covered by said lease. Wells stated that the well which was drilled on the 40-acre drilling unit was located on his land and that it was a producing well; that nothing had been done toward drilling on the remaining 88.05 acres; and that during the month of September 1960 he gave a lease to Toler and Phillips. He stated he had asked the oil company to give him an offset well on the 88.05 acres, and they had refused to do so. Wells admitted that he had received royalties on the production from the 25.95 acres. Henry Toler testified that he owned a mineral interest in the Floyd E. Wells' tract, which he had acquired from Floyd E. Wells and his wife, and

Julius Wells and his wife; that he and Phillips had acquired a lease on the 88 acres of the Wells' land which was outside the drilling unit; that he had drilled a number of wells in Mississippi; and that he was in a position to drill on the 88-acre tract.

At the conclusion of the hearing the chancellor, on December 9, 1961, entered a decree dismissing with prejudice the amended bill of complaint.

· The appellants have assigned and argued three points as grounds for reversal of the decree of the lower court: (1) That the trial court erred in refusing to award to the appellants a decree cancelling as a cloud upon their title that portion of the appellees' oil and gas lease covering the 88.05-acre tract, which was not included within any drilling unit during the primary term of the lease, and upon which no well was ever drilled; (2) that the trial court erred in refusing to award the appellants a decree adjudicating and determining that, by operation of law, the appellees' lease, in so far as it pertained to and covered the 88.05-acre tract of land lying outside of, and not included within any drilling unit, and upon which tract no well was ever drilled, expired as to the 88.05-acre tract at the expiration of the primary term of said lease; and (3) that the trial court erred in refusing to award the appellants a decree determining and adjudicating that production from the well located in the drilling unit which was composed partly of lands covered by the lease owned by the appellees could not serve to extend the term of said lease "for so long as said well produces," so as to bind other lands also under lease to the appellees, but not included within the drilling unit, and upon which no well was ever drilled.

The pertinent provisions of the Continental lease applicable to the issues presented for our decision on this appeal are as follows:

"2. Subject to the further provisions hereof, this lease shall continue in full force and effect for a period of one year, 2½ months from this date, hereinafter referred to as the primary term and as long thereafter as either (1) oil, gas * * * or any other mineral is produced from the land herein leased or from any land with which said land or any part thereof is then unitized as hereinafter provided * * * or (3) drilling operations are conducted in good faith on the land herein leased or on any land with which the land herein leased, or any part thereof is then unitized as herein provided."
"* * *

"5. Lessee shall have the right from time to time as. to all or any part or parts of the land herein leased to unitize, pool and combine the same as to all or any mineral or stratum thereunder with other land or leases covering land in the same area as the leased premises by combining the leasehold estate and lessor's royalty estate created by this lease with any other lease or leases, royalty or mineral estate or estates in and under any other tract or tracts of land, regardless of the ownership thereof, so as to create by the combination of such interests or any of them one or more unitized areas to be developed and operated as though such lands and interest were all included within the terms hereof and constituted a single oil, gas and mineral lease. * * * All production from any such unitized area shall be divided and allocated on an acreage basis to all lands included in the particular unitized area. * * * Lessee shall not be obligated to drill any offset wells upon the leased premises to offset wells drilled upon any unitized area which includes any part of the leased premises. The commencement of drilling operations or the completion of a well for production or the production of oil, gas, * * * or any other mineral therefrom on any

portion of any such unitized area in which all or any part of the land described herein is embraced shall have the same effect as though a well had been commenced or completed or production obtained on the land herein described under the terms thereof. * * *.''

The appellants' attorneys, in their brief, say that there is but one justiciable issue presented for our decision on this appeal and that is: Under the law, can the defendant oil companies as lessees, and their assigns, place within a drilling unit a fractional portion of the total acreage leased and, by completing a producing well upon that fractional acreage within the unit, effectively and completely bind beyond the primary term of the lease the greater portion of the acreage outside the unit, from which no production is, or ever will be, obtained so long as that one well produces?

The appellants' contention in the court below and upon this appeal is, that the completion of the one producing well upon the 25.95 acres included in the drilling unit cannot serve to bind the acreage lying outside of the unit, any provisions of the appellees' lease to the contrary notwithstanding. The purpose of the appellants' suit is to have the court cancel the appellees' lease as to the 88.05 acres not included within the 40-acre drilling unit, and to have the court adjudge the lease of the appellants Toler and Phillips to be the only valid and subsisting lease of the oil, gas and other minerals under the 88.05-acre tract of land owned by the appellant-lessors and not placed within any drilling unit.

The appellants in their pleadings, their testimony and their brief, admit that the Floyd E. Wells' Unit No. 1 was drilled upon the land covered by the Continental lease and completed as a commercial oil well prior to the end of the primary term, and that it has continued to produce since that time, and that the appellant-lessors have received, accepted and retained their shares of the

production therefrom. The appellants admit that the drilling unit was legally designated and established, that all interests inside the unit were pooled and integrated, and that the Continental lease continues in full force and effect as to the leased acreage within the drilling unit. It is argued, however, that an adjudication by this Court that production from a unit well located on the leased premises within a drilling unit, established by the action of the state, binds the land lying outside of the drilling unit for a term as long thereafter as the unit well produces, would deprive the appellant-lessors of their property without due process of law; and that an affirmance of the decree of the lower court in this case would directly contravene the long established and clearly enunciated policies of this state with respect to the conservation and orderly production of oil and gas and the protection of the rights of lessors and royalty and mineral owners; and the appellants' attorneys cite in support of that contention Texas Gulf Producing Company v. Griffith, 218 Miss. 109, 65 So. 2d 447, 65 So. 2d 434.

But we think the opinion in the Griffith case is not controlling here. The facts in that case were entirely different from the facts in this case. In the Griffith case the drilling unit was established and the interests therein were integrated under implied legislative authority, and under statutes entirely different from the statutes in force at the time the lease in this case was executed. In this case the drilling unit was designated and established by the lessee pursuant to the authority conferred upon the lease in the lease contract and agreement voluntarily entered into by and between the lessor and the lessee. In the Griffith case the producing well was not located on the land covered by the lease sought to be cancelled. In this case the producing well is located on the land covered by the lease sought to be cancelled in part. In the Griffith case those seeking to cancel the

lease had refused to execute amendments authorizing pooling, had denied the validity of the lease and had refused to accept the payments of royalty. In this case the appellant-lessors granted to the lessee authority to unitize the land covered by the lease with other lands; and all of the appellants have recognized the validity in part of the lease and have accepted and retained royalties from production therefrom. In the Griffith case the Court was careful to state in its opinion that it dealt with the question presented only as it arose out of the particular facts of that case.

The Griffith case was decided under the 1932-1936 Conservation statutes, and the rules of the State Oil and Gas Board promulgated thereunder; and, as stated by Judge Ethridge in a specially concurring opinion rendered on the Suggestion of Error, the situation in that case was not caused by the lessor, "but was brought about by the actions of appellant, Texas Gulf Producing Company, Lessee, the statutes and the intervention of the State Oil and Gas Board in the exercise of the police powers of the state." The Court in that case simply held that it was not willing to imply from the general terms of the 1932-1936 statutes, and the supplemental rules promulgated by the Board under authority of those statutes, "that the Legislature intended that production not on leased land within the unit would continue the lease as to lands not within the unit."

We have a different situation here. Section 6132-22, Mississippi Code of 1942, Rec. (Sec. 10(a), Ch. 256, Laws 1948, as amended by Sec. 3, Ch. 220, Laws of 1950, provides that, "(a) When two or more separately owned tracts of land are embraced within an established drilling unit, the person owning the drilling rights therein and the rights to share in the production therefrom may validly agree to integrate their interests and to develop their lands as a drilling unit." The lease contract which the appellant-lessors executed on January 10, 1958, and

which the appellants now seek to have invalidated in part, expressly provides that the lease shall continue in force and effect for the primary term and as long thereafter as oil, gas or other mineral is produced from the lands leased or from any lands with which said lands or any part thereof is then unitized as provided therein. The lease contract also provides that, "Lessee shall have the right from time to time as to all or any part or parts of the land herein leased to unitize, pool and combine the same as to all or any mineral or stratum thereunder with other land or leases covering land in the same area as the leased premises," and that, "Lessee may, from time to time, change any such unitized area by enlarging it as to size or scope or by reducing it to eliminate any acreage, interest, mineral or stratum as to which there is or may be an adverse claim or to comply with any order, rule or regulation of any governmental authority." The appellants would have the court rewrite those and other provisions of the contract and release entirely from the provisions of the contract that part of the 114 acres which was not included in the 40-acre drilling unit mentioned above. This we cannot do upon the showing made.

The lower court, by its action in dismissing with prejudice the appellants' bill of complaint, in effect held that the drilling of the productive well within the 40-acre pooled unit mentioned above, upon a part of the appellant-lessors' lands covered by the Continental lease, validated and continued in force the lease as to that part of the appellant-lessors' lands lying outside of the drilling unit. The question which we have to decide on this appeal is whether, in view of the facts disclosed by the record, the decision of the lower court was correct. We think that question must be answered in the affirmative.

The rule recognized by practically all of the authorities is that the drilling of a producing well, pro-

ducing oil or gas in paying quantities, within a drilling unit, validates the lease as to the leased lands lying outside of the drilling unit.

Summers, in his treatise on The Law of Oil and Gas, says: "Where only a part of a leased tract is included within a pooled or unitized area, a majority of the courts hold that drilling or production within the unitized area during the primary term of the lease, which prevents the termination of the lease at the end of the primary term, prevents its termination as to the portion of the lease excluded from the unitized area as well as to that portion included." Summers, Oil and Gas, Permanent Ed., Vol. 2, p. 293, Sec. 302.1. See also Scott v. Pure Oil Co., C. A. Tex. 1952, 194 F. 2d 393; Buchanan v. Sinclair Oil & Gas Co., C. A. Tex. 1955, 218 F. 2d 436; McCammon v. Texas Co., D. C. Kan. 1955, 137 F. Supp. 256; Gray v. Cameron, 1950, 218 Ark. 142, 234 S. W. 2d 769; Hunter Co. v. Shell Oil Co., 1947, 211 La. 893, 31 So. 2d 10; Clovis v. Pacific Northwest Pipeline Corp., (Colo. 1959), 345 P. 2d 729.

The appellants' contention that our holding that the drilling of a productive well within a pooled unit and on a part of the appellants' land covered by the lease binds that part of the appellants' leased lands lying outside of said unit for a term as long thereafter as the unit well produces, will deprive the appellant-lessors of their property without due process of law, and that such holding contravenes the established policy of the state, as declared in Chapter 256, Laws of 1948, is, in our opinion, unsound for the reason that it ignores the fact that the unitization in this case was expressly authorized by the provisions of the statute, Sec. 6132-22, Code of 1942, Rec., which has been quoted above, and by the terms of the Continental lease contract executed by the appellant-lessors on January 10, 1958.

The appellants' attorneys also contend that, by the adoption of the rule referred to above, the appellees

can from now on retain the nonunitized lands doing nothing with them in the future to the detriment of the complainant-lessors. But that contention, in our opinion, is likewise unsound, for the reason that the implied covenant for reasonable development requires the lessee to develop all of the lease as would an ordinary prudent operator.

A similar contention was made by the appellants in the very recent case of Clovis v. Pacific Northwest Pipeline Corporation, (Colo. 1959), 345 P. 2d 729. The court rejected that contention, and in its opinion said: "The rationale of the majority rule is recognition by the courts that the implied covenants for reasonable development and protection against drainage apply to leased lands outside of pooled units such as those held by defendants. These covenants are deemed by the courts to be sufficient remedies to compel lessees to protect the lessors' other lands from drainage and to proceed with their reasonable development in due course. We add that these covenants exist independent of the primary term and continue to protect the outside acreage. The covenant to develop requires the lessee to develop all of the lease as would any ordinary prudent operator. These plaintiffs have a remedy for a breach of this covenant if it occurs, which remedy could consist of either a cancellation of that part of the lease, for damages, or for both. See 35 Texas Law Review, 839, June, 1957; Nunley v. Shell Oil Co., La. App. 1954, 76 So. 2d 111, later appealed as to attorneys' fees only in 1956, 229 La. 349, 86 So. 2d 62."

In discussing the implied covenant of the lessee to reasonably develop the land after discovery of oil or gas in paying quantities, the textwriter in Summers' Oil and Gas, Permanent Ed., Vol. 2, p. 559, Sec. 398, says: "In absence of express stipulation creating a duty to proceed with drilling after the discovery of oil and gas in paying quantities, the law, to accomplish the

manifest intention of the parties, in leases where the principal consideration is royalties to be paid the lessee, implies a duty on the part of the lessee to reasonably develop the premises. Where the duty for further development is created in general terms, the law implies that the lessee will proceed with diligence in drilling sufficient number of wells to properly develop the land. In either case the measure of diligence as to the number, manner, time, and location of wells to be drilled by the lessee is a question to be determined by the facts and circumstances of the particular case.'' See also Buchanan v. Sinclair Oil & Gas Company, .U. S. C. Ap. Fifth Circuit, 218 F. 2d 436, and cases cited.

In Millette v. Phillips Petroleum Co., 209 Miss. 687, 48 So. 2d 344 (1950), this Court recognized and applied the implied covenant to drill an offset or protection well, and an implied covenant of the lessee to refrain from depleting the lessor's mineral interest by an affirmative act of the lessee. 209 Miss. at 701-704. On a subsequent appeal, in Phillips Petroleum Co. v. Millette, 221 Miss. 1, 72 So. 2d 176 (1954), the Court affirmed a judgment for a lessor against a lessee for violating the latter covenant, the implied covenant not to deplete the resources of its lessor, and declined to apply the prudent operator test in the latter instance.

Paraphrasing the language of the court in Buchanan v. Sinclair Oil & Gas Co., supra, what and all that the lower court determined and adjudged in this case, and all that we hold and adjudge in affirming the decree of the lower court, is that, under the undisputed facts, drilling on and production from the unit well in this case has kept, and is keeping, the lease in force against the claim that because there is no production from the 88.05 acres of the Wells' land covered by the Continental lease the lease has by its own terms expired or terminated as to the 88.05 acres. Nothing in the lower court's judgment, nothing in our affirmance of it, justifies, au-

thorizes, or will permit the appellees to hold the un-unitized portion of the Wells' land against well-founded legal claims for breach of the implied covenants, or, where there is no other adequate relief, against well-founded claims for relief in equity.

The decree of the lower court is therefore affirmed, without prejudice, however, to the appellant-lessors' right to resort to any relief other than that specifically sought and denied in this case, to which they may be advised they are entitled.

Affirmed.

*McGehee, C. J.,* and *Arrington, Ethridge,* and *Gillespie, JJ.,* concur.