E. O. McCAMMON, Plaintiff,

v.

The TEXAS COMPANY, a corporation and Columbian Fuel Corporation, a corporation, Defendants.

Civ. No. W–656.

United States District Court
D. Kansas.

Aug. 13, 1955.

Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for plaintiff.

Foulston, Siefkin, Schoeppel, Bartlett & Powers, Wichita, Kan., for defendant.

CHANDLER, District Judge.

The question here is whether, where two non-contiguous tracts of land are included in an oil and gas lease, the lease will terminate as to one tract lying without a pooled area in the absence of production thereon during the primary term, if production has been had on the other tract and within the pooled area prior to the expiration of the term.

Plaintiff, E. O. McCammon, is now, and at all times since the execution of the original lease has been, the sole lessor of an oil and gas lease covering the *NE/4 of Section 1* and the *S/2 of Section 12*, both in Township 33 South, Range 40 West, Morton County, Kansas. The lease was executed April 19, 1943 for a term of 10 years. Through a series of assignments, defendants, the Texas Company and Columbian Fuel Corporation, on February 10, 1945 became partial assignees of the lease, in the respective percentages of 89.42% and 10.58%, insofar as it affects the *NE/4 of Section 1, Township 33 South, Range 40 West.* It is against the interests of these two

companies plaintiff would have his title quieted.

On April 19, 1950 the lessor, E. O. McCammon, entered into an agreement with owners of other leases and the assignee of the lease insofar as it covered the *S/2 of Section 12* under the terms of which the S/2 of Section 12 was consolidated with other lands to form a 640-acre unit comprising all of Section 12. Royalty was to be apportioned to each lessor in proportion to the acreage contributed to the unit. Thus plaintiff would receive *one-half* of the total royalty from production *within* this unit.

Since June of 1952, which date was prior to the expiration of the primary term, a completed gas well on the S/2 of Section 12 has been producing in commercial and paying quantities and plaintiff has been receiving royalty therefrom on the basis of ½ of ⅛ of all production.

Assuming the right so to do, plaintiff, on *June 23, 1953*, sent the Texas Company a notice of forfeiture of the lease pursuant to Kansas G.S.1949, 55–201 et seq. The same day Texas and Columbian Fuel executed a declaration of unitization for development and operation of the NE/4 of Section 1, and SE/4 of Section 1, both in Township 33 South, Range 40 West, Morton County, Kansas, and on August 7, 1953 Texas and Columbian completed a gas well on the SE/4 of said Section 1 capable of producing in paying and commercial quantities. *Six days* thereafter this action was filed.

Plaintiff's contention is that assignment of the lease as to the NE/4 of Section 1 constituted a separate lease arrangement, that such an effect of assignment was contemplated under the original lease, that the unitization agreement pooling the S/2 of Section 12 with the rest of Section 12, *to which agreement defendants were not* parties, specifically provided that any part of a lease not covered by the agreement was to be considered a separate lease for all purposes; that such was the construction placed upon the lease and unitization agreement by *all* parties as evidenced by the fact that defendants paid delay rentals on April 1, 1952 with knowledge of the unitization agreement of 1950 and the subsequent production from the leased land within the unitized area, which knowledge, of course, defendants deny.

Defendants simply urge the view that assignment of a portion of the lease to them did not separate that portion from the original lease, and that production for the S/2 of Section 12, Twp 33 South, Range 40 West, that part of the leased acreage within the unitized area, during the primary term extended the term of the lease as to the assigned acreage outside the unitized area.

Looking first to the lease itself, nowhere does there appear an expression of intention on the part of McCammon, the lessor, and his original lessee that the lease should ever be divisible as to either express or implied obligations of either party. Paragraph 9 of the lease grants to the *lessee* the right to consolidate the gas leasehold estate "with any other *adjacent or contiguous* gas leasehold estate" not to exceed a total area of 640 acres. Par. 9 also provides "the consolidated gas leasehold estate shall be deemed, treated and operated in the same manner as though the entire consolidated leasehold estate were originally covered by and included in this lease", and "a producing gas well on any portion of the consolidated estate shall operate to continue the oil and gas leasehold estate hereby granted so long as gas is produced therefrom." Plaintiff contends that this section contemplated unitization of only the *entire* leased area with other areas and since part of the leased area was not included in the April 19, 1950 unitization agreement, the provision for extension of the primary term by production cannot apply thereto. Followed to its logical conclusion such a construction might be said to have voided, at its inception, any attempted unitization of any area *less than* the total leased area. It can hardly be imagined that after receiving royalties for some two years under the lease, the plaintiff would

now urge such a construction. Nor can it be imagined the other parties to the unitization agreement would now permit such an interpretation without formidable legal opposition thereto, for such a construction would divest them of all royalties received to date.

Paragraph 11 of the lease contract provides:

"If the leased premises shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage. There shall be no obligation on the part of the lessee to offset wells on separate tracts into which the land covered by this lease may be hereafter divided by sale, devise, or otherwise, or to furnish separate measuring or receiving tanks. It is hereby agreed that, in the event this lease shall be assigned as to a part or as to parts of the described lands, and holder or owner of any such part or parts shall fail or make default in the payment of the proportionate part of the rent due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said land upon which the said lessee or any assignee hereof shall make due payment of said rentals. * * * "

It is to be noted that regardless of how ownership of the land under this lease is or may become vested the lease specifically provides that (1) the premises shall be developed and operated as *one lease,* (2) all royalties are to be treated as an *entirety* and divided pro rata among separate owners, (3) there is no obligation of the lessee to drill offset wells on separate tracts, (4) and delay rentals may be paid on a pro rata basis and the failure of a partial assignee to pay his pro rata

part of the entire rental does not defeat the lease as to land on which rental has been paid.

Paragraph 13 of the lease provides:

"Notwithstanding anything in this lease contained to the contrary, it is expressly agreed that if lessee shall commence drilling operations at any time while this lease is in force, this lease shall remain in force and its term shall continue so long as such operations are prosecuted and, if production results therefrom then as long as production continues."

Paragraph 14 of the lease provides in part:

" * * * It is agreed, however, that the completion of a well producing or capable of producing gas, upon the property hereinabove described, or the inclusion of such property in a consolidation unit producing or capable of producing gas as provided by paragraph number 9 hereof, shall constitute full and complete development with respect to the gas leasehold estate hereby granted. If, upon, or after the expiration of the primary term of this lease, the well or wells on the leased premises, or on the consolidated gas leasehold estate, shall be incapable of producing, this lease shall not terminate provided lessee resumes operations for drilling a well on the leased premises or on the consolidated gas leasehold estate within one hundred twenty (120) days from such cessation, and this lease shall remain in force during the prosecution of such operations and, if production results therefrom, then as long as production continues."

And finally Paragraph 16 of the lease reads:

"This lease and all its terms, conditions, and stipulations shall extend to and be binding on all the heirs, grantees, administrators or assigns of said Lessor or Lessee."

It would seem that the use of the word "all" in Paragraph 16 precludes a construction of the lease that would make any part of the lease or any of its express or implied covenants severable.

Plaintiff has relied principally on the case of Texas Gulf Producing Co. v. Griffith, 218 Miss. 109, 65 So.2d 447. The statement of Justice Ethridge,

" * * * nor do we consider whether a producing well on the leased lands in the unit continues the lease on lands outside of it."

in a specially concurring opinion when the case was heard on suggestions of error precludes its consideration as authority here. Texas Gulf Producing Co. v. Griffith, 218 Miss. 109, 65 So.2d 834, 838.

Regarding forfeitures of oil and gas leases it is said in 2 Summers Oil & Gas, Section 439, at page 448:

"The policy of any court towards forfeitures of oil and gas leases may be entirely consistent, if it enforces a forfeiture of a lessee's interest where the power to do so is clearly and unmistakably created by the language of the lease, but refuses to do so where it is not so expressed. Most courts have adhered rather closely to the rule that forfeitures will not be enforced unless expressly created and have construed the language of the leases purporting to create powers of forfeiture strictly."

3 Summers Oil & Gas, Section 512, page 183 discussing divisibility of lease covenants and the liabilities of a lessee and his assignee or partial assignee under an "unless" lease says:

" * * *, the drilling of a well anywhere within the boundary of the land originally leased will relieve the lessee and his assignee or partial assignee of the liability that the lease be terminated, whether in the particular case the drilling has been done by the lessee, his assignee, or partial assignee."

And at page 184:

" * * * As in the case of the 'unless' drilling clause, the lease is extended if oil or gas is being produced in paying quantities from any part of the leased land by the lessee, his assignee, or his partial assignee,[21] even despite the fact that the lease embraces more than one tract [22] and is given by joint lessors.[23] (Citing cases)

"So, for the purpose of determining the liabilities of the lessee, and his assignees, the lease is said to be 'entire',[24] meaning that *the liabilities are not altered by any division which the lessor or lessee may choose to make of their interests.*" (Citing cases) (Emphasis added.)

While it is obvious that the parties may stipulate in a lease that the lessee be required to develop the land with separate portions as units, all the terms of the lease before this court clearly indicate that the intention of the parties was that, *though covering more than one tract of land, the lease was to be developed as a unit.*

3 Summers Oil & Gas, Section 513, 1953 Pocket Part, beginning at page 44, discusses the Texas case of Terrell v. Munger Farm Co., Tex.Civ.App., Civ. App.1939, 129 S.W.2d 407, in which the Court seemed to take the view that express and implied covenants for development are divisible. In view of the prior holding of the courts and my conviction that the arguments advanced therein are sound, I am of the opinion that unless clearly and expressly stated within a lease to the contrary, the covenants for development are indivisible. See also Kulp Oil and Gas Rights, Section 10.67, page 665, paragraph 2 and cases cited in footnotes 10 and 11.

Judgment, therefore, is entered for defendants and for their costs in this action.