## No. 18,409.

CHARLES E. CLOVIS, SR., ET AL. *v.* PACIFIC NORTHWEST
PIPELINE CORPORATION, ET AL.

(345 P. [2d] 729)

Decided November 2, 1959.

Mr. WILLIAM S. EAKES, Mr. E. B. HAMILTON, for plaintiffs in error.

Messrs. HATFIELD & HORTHER, Messrs. SIMMS, MODRALL, SEYMOUR, SPERLING & ROEHL, for defendant in error Pacific Northwest Pipeline Corporation.

Mr. J. K. SMITH, for defendant in error Pan American Petroleum Corporation.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

PLAINTIFFS in error were plaintiffs below and will be referred to herein as plaintiffs. The defendants in error will be referred to as defendants and the Oil and Gas Conservation Commission of Colorado as the Commission.

On March 1, 1946, plaintiffs granted to one Paul L. Davis, the predecessor of leasehold rights of these defendants, an oil and gas lease covering 632 acres of land owned by them in La Plata County, Colorado. The lease provided for a primary term of ten years and as long thereafter as oil or gas is produced from the land. Some of the parcels of land covered by the lease were noncontiguous to other parcels. The lease contained no clause providing for voluntary pooling or unitization.

On October 8, 1955, defendant Pacific Northwest Pipeline Corporation commenced drilling a well in the North Half of Section 7, Township 33 North, Range 9 West, N.M.P.M., in which half section plaintiffs own fifty-two acres of land, but this well was not on plaintiffs' land.

On November 21, 1955, the Commission entered certain spacing regulations for wells which affect all of plaintiffs' lands covered by the lease except some 240 acres. These regulations limited the drilling of gas wells to one well for each 320 acres or half section. Plaintiffs made no objection to the entry of these regulations.

After the commencement of the well in Section 7, defendant Pacific Northwest applied to the Commission for an order pooling the North Half of Section 7, which was granted over plaintiffs' objections by order dated January 13, 1956.

Later the same defendant sought an order pooling the South Half of Section 6, which adjoined Section 7. Before the order was granted on January 18, 1956, the said defendant commenced drilling a well on plaintiffs' land within the said half section. After hearing, the Commission, over plaintiffs' objections, pooled the South Half of Section 6. The wells drilled in both sections 6 and 7 were producers.

Plaintiffs own a total of 140 acres in Section 6, and 52 acres, as above stated, in Section 7, making a total of 192 acres in the two pooled units. The balance of 440 acres of plaintiffs' leased lands thus were not within any unit.

The pooling arrangement has reduced substantially the plaintiffs' royalty from their ⅛th lease share as to the well on their land in Section 6 which lies within one of the units. On the other hand plaintiffs are receiving a royalty from the other unit even though no well has been drilled on their land which is included within it. At this time they are receiving neither royalties nor rentals for their lands not included within pooled units.

Plaintiffs commenced an action in the District Court of La Plata County, Colorado, seeking a declaratory judgment as to whether the drilling of the producing wells in question within the two pooled units validated the lease as to all of plaintiffs' lands contained within the lease and located outside of said units.

Issue was joined and the matter submitted to the trial court on an agreed statement of facts and agreed statement of issues. The trial court found the issues in favor of the defendants and entered its judgment and decree accordingly. It further dispensed with the motion for new trial and plaintiffs are here by writ of error to review the judgment.

Two questions of law were decided by the trial court:

1. Does the drilling of a productive well within a pooled unit upon part of plaintiffs' lands covered by the

lease validate the lease as to that part of the plaintiffs' leased lands lying outside of said unit?

2. Does the drilling of a productive well within a pooled unit containing a portion of the plaintiffs' leased lands but not upon plaintiffs' lands within the unit validate the lease as to those parts of the plaintiffs' leased lands lying outside of the said unit?

These two questions were both answered affirmatively and correctly by the trial court when it applied what is termed the majority rule to this fact situation.

■ We find two lines of authority on the applicable law. The one which seems the most reasonable and just to us is the majority rule followed in several jurisdictions. It holds that in both types of situations the drilling of a producing well within a unit validates the outside acreage contained within the same lease. See *Hunter Co. v. Shell Oil Co.* (1947), 211 La. 893; 31 So. (2d) 10; *Le Blanc v. Danciger Oil & Refining Co.* (1950), 218 La. 463, 49 So. (2d) 855; *Gray v. Cameron* (1951), 218 Ark. 142, 234 S.W. (2d) 769 (lease contained unitization authority); *Trawick v. Castleberry* (1954), 135 Okla. 1, 275 Pac. (2d) 292; *Buchanan v. Sinclair Oil & Gas Co.* (5th Cir. 1955), 218 Fed. (2d) 436 (lease contained unitization authority); and in relation to non-contiguous tracts the same rule was applied in *McCammon v. Texas Co.* (D. Kan. 1955), 137 F. Supp. 256. Also see *Hillegust v. Amerada Petroleum Corp.* (Tex. Civ. App. 1955), 282 S.W. (2d) 892, where two non-contiguous tracts were under a single lease and it was held that production on one extended the lease beyond the primary term as to the other.

And see *Gregg v. Harper-Turner Oil Co.* (10th Cir. 1952), 199 Fed. (2d) 1, where the lease in question was on 160 acres, 40 of which were included in a unit. Two years after expiration of the primary term the lessor sued for cancellation as to 120 acres left out of the unit. It seems at the time there was commercial production on three sides of the leased tract sought to be cancelled.

The court rendered a decree of conditional cancellation holding that if the lessee did not commence operations on the 120 outside acres within ninety days the lease was cancelled as to such acreage.

Plaintiffs contend that by the adoption of this rule defendants can from now on retain the non-unitized lands doing nothing with them in the future to plaintiffs' detriment. This of course is not so. The rationale of the majority rule is recognition by the courts that the implied covenants for reasonable development and protection against drainage apply to leased lands outside of pooled units such as those held by defendants. These covenants are deemed by the courts to be sufficient remedies to compel lessees to protect the lessors' other lands from drainage and to proceed with their reasonable development in due course. We add that these covenants exist independent of the primary term and continue to protect the outside acreage. The covenant to develop requires the lessee to develop all of the lease as would any ordinary prudent operator. These plaintiffs have a remedy for a breach of this covenant if it occurs, which remedy could consist of either a cancellation of that part of the lease, for damages, or for both. See 35 *Texas Law Review*, 839, June, 1957; *Nunley v. Shell Oil Co.* (La. App. 1954), 76 So. (2d) 111, later appealed as to attorneys' fees only in 229 La. 349, 86 So. (2d) 62 (1956).

The minority rule urged by plaintiffs, and which we decline to follow, in our view fails to consider the applicability of the implied covenant of reasonable development to the type of situation before us. See *Texas Gulf Producing Co. v. Griffith* (1953), 218 Miss. 109, 65 So. (2d) 447, and 65 So. (2d) 834, where other points are considered.

The judgment is affirmed.

MR. JUSTICE HALL and MR. JUSTICE DAY concur.