**NORTH YORK LAND ASSOCIATES, a Colorado Limited Partnership, Plaintiff-Appellee,**

v.

**BYRON OIL INDUSTRIES, INC., a Missouri Corporation, Defendant-Appellant.**

No. 82CA0274.

Colorado Court of Appeals, Div. III.

Sept. 27, 1984.

Rehearing Denied Nov. 1, 1984.

Certiorari Denied Feb. 19, 1985.

Coghill & Goodspeed, P.C., H. Thomas Coghill, Helen R. Eckardt, Denver, for plaintiff-appellee.

Sumners, Miller & Clark, William G. Sumners, Jr., Thomas J. Young, Jr., Denver, for defendant-appellant.

VAN CISE, Judge.

In this action, judgment was entered in October 1981 cancelling oil and gas leases

held by defendant, Byron Oil Industries, Inc. (lessee), on approximately 324 acres of land in Adams County owned by plaintiff, North York Land Associates (lessor). Lessee appeals. We affirm in part and reverse in part.

Leases on 480 acres, including the 324 acres in issue here, were granted by lessor's predecessors in 1974 for a primary term of two years and for "as long thereafter as oil or gas ... is produced therefrom." In September 1975, lessee entered into a pooling agreement with lessor's predecessors whereby 80 acres of the leased property, all of which is included in lessor's land, were combined with 80 neighboring acres for purposes of sharing production from a well to be drilled on the neighboring land. This 160 acre parcel is referred to as the "pooled area" and the remaining portions of the leasehold are the "non-pooled area."

A clause in the pooling agreement provided that the leases, insofar as they cover the pooled area, would remain in effect so long as "substances are produced from said area in commercial quantities." As to the non-pooled area, paragraph (7) of that agreement states:

"Nothing herein shall be deemed to release lessee from his lease obligations to diligently explore, to prudently develop, and to protect from drainage, any parts of the leases ... not included in the '[pooled] area.'"

In February 1976, lessee completed an oil well (the Wright Unit No. 1) in the neighboring land portion of the pooled area. The landowners/lessors have been receiving royalties from the production of this well since its completion. The trial court made no finding, although there was evidence on which a finding could be made, as to whether the production from this well was "in commercial quantities."

Only one well (the Ehler # 1) has been drilled on any of the leased lands. It was drilled on the non-pooled area pursuant to a farm-out agreement. It was abandoned as a non-commercial well in May 1977 after producing only a small amount of oil.

Since May 1977, there has been no exploration or development of any part of the leasehold, and lessor and its predecessors have received neither royalty nor rentals for their non-pooled land.

In 1979, lessor obtained its interests in the lands and leases from its predecessors and became the controlling owner/lessor of both the non-pooled area and the 80 leased acres in the pooled area. The leases and the pooling agreement all provide that the covenants contained therein run with the land.

Lessor commenced this action for lease cancellation in January 1980. After a non-jury trial, the court entered an order cancelling the leases in both areas. This appeal followed.

## I. The Non-Pooled Area

### A.

Ordinarily, the drilling of a productive well within a pooled unit, whether the well is on the lessor's land or on the land of another within the unit, is sufficient to extend the lease beyond the primary term even as to those parts of the lessor's leased lands lying outside of the pooled unit. *Clovis v. Pacific Northwest Pipeline Corp.*, 140 Colo. 552, 345 P.2d 729 (1959). However, in the instant case, under the above-quoted paragraph of the pooling agreement, the lessee was specifically obligated to explore and develop the non-pooled area. Therefore, we must consider this portion of the leasehold separately from the 80 acres that are within the pooled area.

Lessee contends that it complied with the "prudent operator standard" and that, therefore, the lease should not have been cancelled.

We agree with lessee that the standard for determining whether a lessee has complied with its obligations to explore or to develop, whether speaking of the specific conditions in the pooling agreement or the implied covenants in oil and gas leases generally, is the "prudent operator standard." *Sauder v. Mid-Continent Petroleum Corp.*, 292 U.S. 272, 54 S.Ct. 671, 78

L.Ed. 1255 (1934); *Fischer v. Magnolia Petroleum Co.,* 156 Kan. 367, 133 P.2d 95 (1943). That standard includes any obligation to develop reasonably and to explore further. *See Gillette v. Pepper Tank Co.,* 694 P.2d 369 (Colo.App.1984). Here, the trial court found, on supporting evidence, that "a prudent operator would not explore or develop the leasehold now or in the foreseeable future." It follows that lessee was not obligated to explore, or develop, or drill on, this leasehold any further.

> However, as stated by the trial court: "[T]he even more important corollary to [the prudent operator standard] is controlling, the principle that a lessee may not hold the land merely for speculation in the hope that non-viable mineral holdings will become economic at some unknown time in the future....
>
> "If sufficient exploration of a general area has taken place to establish good potential for successful drilling on a leasehold, then the lessee must commence drilling or be held to have breached the covenant of development. On the other hand, if the exploration of the surrounding area shows very poor potential for profitable wells, then the lessee must surrender the lease rather than hold it on the mere speculative and remote hope that the economics might change in favor of profitable drilling. The lessee's protestations that the drilling potential is great and that new, unproven formations might result in greater returns are not borne out by the facts and are contradicted by the lessee's own inaction.
>
> . . . .
>
> "If the obligations [to explore and develop] are being met, then there is consideration for continuing the lease; if not, then the lessee is holding the non-producing lands for free, a situation which the courts remedy by cancelling the lease."

■ As stated in *Sauder v. Mid-Continent Petroleum Corp., supra,* a case in which there was production on part of the leased lands but not on the major portion:

"[Lessor] says that if the lessee with good reason believes there is no mineral to be obtained by further drilling it should give up the lease; [lessee] insists that as there is only a possibility of finding mineral, no prudent operator would presently develop, but the mere possibility entitles it to hold the lease, because it is producing oil from a portion of the area.

"We think the [lessee's] position cannot be sustained.

. . . .

"The production of oil on a small portion of the leased tract cannot justify the lessee's holding the balance indefinitely and depriving the lessor not only of the expected royalty from production pursuant to the lease, but of the privilege of making some other arrangement for availing himself of the mineral content of the land."

The above rule is equally applicable where, as here, the lessor desires to develop the land for purposes other than production of oil and gas.

■ Contrary to lessee's contention, the trial court's finding that lessee was holding the land for speculation is supported by the evidence and reasonable inferences therefrom. It is therefore binding on appeal. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979). Cancellation of the lease of the non-pooled area was a proper remedy.

### B.

Lessee also asserts that the court erred in not giving effect to the judicial ascertainment clause in the leases. This clause applies to disputes between lessor and lessee over any claimed failure of lessee to fulfill its obligations. It provides that if lessee is found to be in default by judicial determination, then it is entitled to some reasonable period of time to cure such default and is not to be ousted without this opportunity.

■ However, lessee did not raise this issue of the judicial ascertainment clause in

its answer, in the pre-trial order, or at trial. Therefore, the trial court properly denied the motion for new trial in which the question was presented for the first time. *See* C.R.C.P. 16(c); *Greenlawn Sprinkler Corp. v. Forsberg,* 170 Colo. 286, 461 P.2d 22 (1969). *See also Perkins v. Russell,* 56 Colo. 120, 137 P. 907 (1913).

### C.

 Lessee next argues that even if the judicial ascertainment clause is not considered, equity requires the trial court to make its decree conditional, allowing lessee a reasonable time to cure its default. We do not agree. No further development on the leased land was planned or would be economically justified, and there is no forfeiture of any well on the property. Thus, there is no sound basis in equity or law for making the decree conditional. *See Graefe & Graefe, Inc. v. Beaver Mesa Exploration Co.,* 635 P.2d 900 (Colo.App.1981).

### D.

 Lessee asserts that in any event lessor had an obligation to make demand on lessee for further development prior to filing suit and that it was error for the trial court to hold otherwise. However, the record does not sustain this argument. The trial court, on supporting evidence, found that lessor "did make verbal demands upon [lessee], and the responses received created a reasonable belief in [lessor] that further demands short of a lawsuit would have been futile." *See Superior Oil Co. v. Devon Corp.,* 604 F.2d 1063 (8th Cir.1979).

### E.

The other contentions of lessee are without merit.

### II. *The Pooled Area*

 The pooling agreement provides that the leases, insofar as they cover the pooled area, remain in effect so long as "substances are produced from said area in commercial quantities." There is evidence in the record from which a finding can be made as to whether the one well in that area, the Wright Unit No. 1, is or is not producing "in commercial quantities," but the trial court has not made any finding on that fact issue. In view of our holdings above, which are generally applicable here also, the propriety of the cancellation of the leases on the 80 acres in the pooled area depends on that finding.

The judgment is, therefore, affirmed as to the cancellation of the leases in the non-pooled area. It is reversed as to the 80 leased acres in the pooled area, and the cause is remanded for a finding by the trial court on whether the production from Wright Unit No. 1, as of the time of the original trial, was "in commercial quantities" and for entry of an appropriate judgment as to the 80 acres based on that finding.

STERNBERG and METZGER, JJ., concur.