WHITHAM FARMS, LLC, and Life Bridge Christian Church, Plaintiffs–Appellants,

v.

CITY OF LONGMONT, Defendant–Appellant,

and

EnCana Energy Resources, Inc., f/k/a North American Resources Company; Taku Resources, LLC; Geronimo Energy Partners, LLC; SOCO Wattenberg Corporation; Barry L. Snyder; and Murray J. Herring, Defendants–Appellees.

No. 02CA1160.

Colorado Court of Appeals, Div. V.

Aug. 14, 2003.

Certiorari Granted Sept. 13, 2004.

Astrella & Rice, P.C., Lance Astrella, T.R. Rice, Denver, Colorado, for Plaintiffs–Appellants.

Claybourne Douglas, City Attorney, Jeffrey J. Friedland, Assistant City Attorney, Longmont, Colorado, for Defendant–Appellant.

Gretchen VanderWerf, P.C., Gretchen VanderWerf, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge CARPARELLI.

In this action based on breach of the implied covenant to develop in an oil and gas lease, plaintiffs, Whitham Farms LLC and Life Bridge Christian Church (collectively, Whitham Farms) and defendant City of Longmont appeal the judgment entered in favor of defendants North American Resources Co., now known as EnCana Energy Resources, Inc. (NARCO); Taku Resources LLC; Geronimo Energy Partners, LLC; SOCO Wattenberg Corporation; Barry L. Snyder; and Murray J. Herring. We affirm.

The three oil and gas leases at issue relate to 310 acres of real property located in Weld County, Colorado. NARCO and the remaining defendants are the lessees of the three leases and NARCO is the operator of those lease rights.

In 1990, the City of Longmont purchased the surface and mineral estates of approximately 25 acres of the property that was encumbered in 1981 by one of the oil and gas leases. In 1995, Whitham Farms purchased the surface and mineral estates of 150 acres of the property encumbered by the same lease.

In 1982, NARCO's predecessor in interest drilled the only well that exists on the property. NARCO recompleted that well as a producing well in 1997.

In 1999, Whitham Farms demanded that NARCO release the oil and gas lease or any acreage not necessary to support the existing well. Whitham Farms cited § 38–42–104, C.R.S.2002, as support for its demand, which requires that when an oil and gas lease "becomes forfeited or expires by its own terms," the lessee must record a written surrender of the lease. Longmont made the same demand in 2001.

After NARCO refused to terminate the lease, Whitham Farms filed this lawsuit seeking declaratory relief. In its answer, Longmont joined in Whitham Farms' complaint and also requested that the oil and gas lease be terminated.

At trial, the sole issue was whether NARCO had breached the lease's implied covenant of reasonable development. The parties agreed that the court could rule based on the pretrial briefs and stipulated facts.

Whitham Farms argued that it was not economically prudent for NARCO to develop the oil and gas reserves and, therefore, that NARCO had breached the covenant of reasonable development and, as a result, Whitham Farms was entitled to equitable termination of the lease.

NARCO agreed that it was not economically prudent for it to develop the oil and gas reserves, but argued that it had not breached the covenant of reasonable development, was not obligated to develop the resources at the present time, and was entitled to continue its leasehold until development became economically prudent.

The trial court ruled that Whitham Farms and Longmont failed to establish a breach of the implied covenant of reasonable development. Accordingly, it entered judgment against Whitham Farms and Longmont, and in favor of the remaining defendants.

## I. Covenant of Reasonable Development

■ On appeal, Whitham Farms and Longmont contend that the trial court erred when it ruled that the oil and gas lease would not terminate for breach of the implied covenant of reasonable development unless Whitham Farms and Longmont established that the drilling of an additional well or wells would be economically viable. We disagree.

### A. Purpose of Oil and Gas Lease

■ The purpose of an oil and gas lease is to make the mineral estate profitable to both parties through the exploration, development, and production of resources located under the leased premises. *See Davis v. Cramer*, 808 P.2d 358, 360 (Colo.1991)("[t]he fundamental purpose of an oil and gas lease is to provide for the exploration, development, production, and operation of the property for the mutual benefit of the lessor and lessee"); *see also Howell v. Appalachian Energy, Inc.*, 205 W.Va. 508, 519 S.E.2d 423 (1999).

The primary consideration in such lease transactions is the royalty derived from the development of the resources. As a result, development is a recognized expectation of both parties. Gary B. Conine, *The Future Course of Oil and Gas Jurisprudence: Speculation, Prudent Operation, and the Economics of Oil and Gas Law*, 33 Washburn L.J. 670 (1994).

### B. Implied Covenants

■ Consistent with the expectations of both parties, Colorado courts recognize four implied covenants: to conduct exploratory drilling; to develop after discovering resources that can be profitably developed; to operate diligently and prudently; and to protect the leased premises against drainage. *Mountain States Oil Corp. v. Sandoval*, 109 Colo. 401, 125 P.2d 964 (1942); *Gillette v. Pepper Tank Co.*, 694 P.2d 369 (Colo.App. 1984). In addition, a division of this court has recognized that the covenant to conduct exploratory drilling includes both exploration before discovering an initial reservoir and later exploration for additional reservoirs in unproven areas. *Gillette v. Pepper Tank Co., supra.*

■ The covenant of reasonable development protects the lessor's expectation that upon finding exploitable resources, the lessee will develop those resources for the mutual profit of both parties. When it is possible to develop known resources profitably and a lessee fails to act diligently to do so, the lessee is deemed to have breached the covenant, and a lessor may seek equitable termination of the lease. *N. York Land Assocs. v. Byron Oil Indus., Inc.*, 695 P.2d 1188 (Colo. App.1984).

### C. Prudent Operator Standard

■ When, as here, there is a proven field of oil or gas, courts have held that a lessee is required to further develop the lease when there is a reasonable expectation that one or more new wells would generate enough revenue to cover the cost of development and return a reasonable profit. *See, e.g., Chenoweth v. Pan Am. Petroleum Corp.*, 314 F.2d 63 (10th Cir.1963)(applying Oklahoma

law); *see also Gillette v. Pepper Tank Co., supra.* Thus, when a prudent operator would have a reasonable expectation of such economic viability and a lessee is not developing the field, it is proper to conclude that the lessee has breached the covenant of reasonable development and to grant an equitable termination to the lessor.

### D. Speculation

Whitham Farms and Longmont argue that it was not necessary that they prove that the drilling of additional wells would be economically viable. Instead, they argue that the lease should be terminated because additional wells would *not* be economically viable and a prudent operator would *not* further develop the field.

In support of this argument, they refer to cases in which courts have concluded that the lessee was holding the lease for the purpose of speculation. For example, in *North York Land Associates v. Byron Oil Industries Inc., supra,* the trial court found that a prudent operator would not explore or develop the leasehold at the current time or in the foreseeable future and, thus, cancelled the lease. On appeal, a division of this court agreed. The division noted that under the prudent operator standard, the lessee was not obligated to explore, develop, or drill on the leasehold any further. Nonetheless, the division held that a corollary to the prudent operator standard controlled: a lessee may not retain its lease based on its production of oil on a small portion of the property and the mere speculative and remote hope that the economics might change and non-viable mineral holdings might become profitable at some unspecified time in the future.

The division stated that "If the exploration of the surrounding area shows very poor potential for profitable wells, then the lessee must surrender the lease rather than hold it on the mere speculative and remote hope that the economics might change in favor of profitable drilling." *N. York Land Assocs. v. Byron Oil Indus., Inc., supra,* 695 P.2d. at 1191.

Relying on *Sauder v. Mid–Continent Petroleum Corp.,* 292 U.S. 272, 54 S.Ct. 671, 78 L.Ed. 1255 (1934), the division concluded that cancellation is appropriate when the lessor wants to develop the land for purposes other than the production of oil and gas. *N. York Land Assocs. v. Byron Oil Indus., Inc., supra.*

### E. Questions of Fact

Here, to determine whether there has been a breach of the implied covenant to reasonably develop, it is necessary to resolve several questions of fact. First, has a reservoir of oil or gas been found? Second, if there is a reservoir, is it possible to develop it profitably? Third, if it can be profitably developed, has the lessee developed it? Fourth, if profitable development of the reservoir is not likely at the current time, is there a potential to develop it in the foreseeable future? And, fifth, is the continuation of the lease consistent with the covenant of reasonable development, or is the lessee holding the lease rights for speculation?

### F. Burden of Proof

■ Before we discuss the trial court's findings regarding these factual issues, we address Whitham Farms' contention that it was NARCO's burden to prove that its continued holding of the lease was not for speculation. We disagree.

The burden of proving a prima facie case for recovery on a civil claim is on the plaintiff. *W. Distrib. Co. v. Diodosio,* 841 P.2d 1053 (Colo.1992). The burden of proof generally rests upon the party who asserts the affirmative of an issue, and "thus, the party seeking to change the status quo bears the burden of proof." *People in Interest of S.E.G.,* 934 P.2d 920, 922 (Colo.App.1997).

■ With regard to implied covenants in oil and gas leases, the "general rule is that the lessor has the burden of proof to show that the lessee did not act in good faith and as a reasonably prudent, similarly situated businessm[a]n." *Alumet v. Bear Lake Grazing Co.,* 119 Idaho 946, 952, 812 P.2d 253, 259 (1991); *see also Sanders v. Birmingham,* 214 Kan. 769, 776, 522 P.2d 959, 965 (1974)("[t]he burden of proof is upon the lessor to establish by substantial evidence that the covenant

has been breached by the lessee"); *Durkee v. Hazan,* 452 P.2d 803 (Okla.1968).

We are persuaded by the rationale of these cases, which are consistent with Colorado authority, and, therefore, decline to adopt the burden-shifting approach urged by Whitham Farms and adopted by the Oklahoma Supreme Court in *Doss Oil Royalty Co. v. Texas Co.,* 192 Okla. 359, 137 P.2d 934 (1943)(once the lessor proves, by a preponderance of the evidence, that additional development would not be profitable, the burden shifts to the lessee to prove why in equity and good conscience the undeveloped portion of the lease should not be surrendered).

### G. Findings of Fact

■ Whether an implied covenant in an oil and gas lease has been breached is a question of fact for determination by the trial court. *See Mountain States Oil Corp. v. Sandoval, supra.* On review, this court must accept a trial court's findings unless they are clearly erroneous. *Gillette v. Pepper Tank Co., supra.*

Here, it is undisputed that: (1) the lease is in the Denver–Julesburg Basin, a field that has been explored, proven, and developed; (2) it has been possible to profitably develop the oil and gas within this leasehold; (3) NARCO further developed the lease into another geological formation as recently as 1997, approximately three years before Whitham Farms filed suit; (4) the existing well is currently producing; and (5) this well has economic value.

Experts for both sides opined that, at the time of trial, a prudent operator would not drill additional wells. Neither expert expressed an opinion whether additional development of the oil and gas would be profitable within a reasonable time or in the foreseeable future.

The trial court found that NARCO "acted reasonably in developing the lands as recently as 1997 and has not ruled out the possibility of further development should such development become profitable." It also found that "the parties are subject to a pooling agreement that specifically provides that one well is sufficient to validate NARCO's lease as to all the lands within the unit." The court thus concluded that Whitham Farms and Longmont failed to establish a breach of the implied covenant of reasonable development. We conclude that the trial court's findings and conclusions were not clearly erroneous. Because Whitham Farms and Longmont did not present any evidence that the resources could not be profitably developed within a reasonable time, they did not met their burden of proving that NARCO was speculating or that the lease should be cancelled on that basis.

### II. Pooling Agreement

■ Whitham Farms also contends that the trial court erred when it concluded that the pooling of one oil and gas lease with another negates NARCO's implied duty of reasonable development. We disagree.

The three leases at issue contain pooling provisions that permit the lessees to pool or unitize the exploration rights with other lands and leases in the immediate vicinity for the production of oil and gas. Relying on these provisions, NARCO and the other defendants entered into an agreement that pooled all of their interests in the property, allowing them to develop the three leases as a single unit.

*Gillette v. Pepper Tank Co., supra,* and *Clovis v. Pacific Northwest Pipeline Corp.,* 140 Colo. 552, 345 P.2d 729 (1959), both held that marginal production from a single well may be sufficient to hold an entire unit and demonstrate fulfillment of implied covenants as to the unitized area. Therefore, we perceive no error.

### III. Accommodation Doctrine

■ We also reject Whitham Farms' contention that the trial court should have applied the doctrine that the lessee must accommodate the surface owner's rights to the fullest extent possible.

Whitham Farms relies on *Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913 (Colo. 1997), in which the supreme court reviewed a surface owner's claim that the operator of the oil and gas lease encumbering the property was trespassing because its use of the

surface was unreasonable. The court applied a "due regard" concept, which requires mineral rights holders to accommodate surface owners to the fullest extent possible consistent with their right to develop the mineral estate. *Gerrity Oil & Gas Corp. v. Magness, supra,* 946 P.2d at 927.

There, however, the surface owner did not own the mineral rights and was not suing as a lessor to enforce the covenant of reasonable development or to terminate the lease of the mineral rights. Therefore, we conclude that the accommodation doctrine articulated in *Gerrity Oil & Gas Corp. v. Magness, supra,* is not applicable here.

## IV. Longmont's Appeal

In its appeal, City of Longmont contends that the lease should be limited to the existing well. Relying on *Graefe & Graefe, Inc. v. Beaver Mesa Exploration Co.,* 635 P.2d 900 (Colo.App.1981), it argues that one well, drilled on the property twenty years ago, should not justify NARCO's "holding" the entire property. We disagree.

In *Graefe,* the lessee breached an express provision in a lease and was required to restore a well and surrounding acres to production. The lease was cancelled as to the remaining 2840 acres based on breach of the implied covenants of further exploration and development. In contrast, the trial court here found no breach of the express terms or the implied covenants of the lease. Moreover, the parties stipulated that the leasehold and the mineral estates of the three leases have been pooled so that the production from the existing well is deemed to be production for each of the three leases.

Accordingly, we discern no error by the trial court in failing to limit the lease to support of the existing well, and we conclude that *Graefe & Graefe, Inc. v. Beaver Mesa Exploration Co., supra,* does not dictate a different result.

The judgment is affirmed.

Judge ROTHENBERG and Judge VOGT concur.